IN THE CIRCUIT COURT OF THE
NINTH JUDICIAL CIRCUIT, AND
FOR ORANGE COUNTY, FLORIDA

CASE NO.: 2010-CA-006319-O

CLARK A. HULS, a natural person,

  Plaintiff,

v.

LUSAN C. LLABONA, Esquire,

A natural person, and

LUSAN C. LLABONA, P.A.,

A professional service corporation, et. al.,

  Defendants.

*Answer Due 4/5/10*

## COMPLAINT

**COMES NOW** the plaintiff, CLARK A. HULS, pro se, to bring complaint to the above-styled Court, of actions undertaken by LUSAN C. LLABONA, Esquire, and LUSAN C. LLABONA, P. A. That entitles him to legal remedy. In support thereof, plaintiff states:

### NATURE OF THE ACTION

1.  This is a civil action for violations of statutory and constitutional law cognizable under the 5th and 14th amendments to United States Constitution and

The United States Code, Titles 18 §1621, 18 §1623, 42 §1983, and 42 §1983.

2. Article I, Sections 2 and 9 of the Constitution of the State of Florida.

3. 2005 State of Florida statutes; Chapters 621, 772, 768, 843, and 918.

4. The Florida Bar's Rules Regulating the Florida Bar; Rule 4-3.3(a)(1), Candor Toward The Tribunal; Rule 4-3.4, Fairness To Opposing Party And Counsel; Rule 4-1.2, Objectives And Scope Of Representation.

## THE PARTIES

5. Plaintiff CLARK A. HULS ("HULS" or "plaintiff") is a natural person domiciled and residing in the territorial confines of Brevard County, Florida.

6. Defendant LUSAN C. LLABONA, Esquire, ("LLABONA" or "defendant") is a natural person. She is an employee, president, and registered agent of Lusan C. Llabona, P.A.. She is domiciled and residing within the territorial jurisdiction of Orange County, Florida.

7. Defendant LUSAN C. LLABONA, P. A., "FIRM" is a professional corporation organized and existing under the Constitution and Laws of the State of Florida, within the territorial jurisdiction of Orange County, Florida. Because FIRM is fully liable for the defendant's actions[1] up to the entire value of said

---

[1] Florida Statute 621.07 ... The corporation or limited liability company shall be liable up to the full value of its property for any negligent or wrongful acts or misconduct committed by any of its officers, agents, members, managers, or employees while they are engaged on behalf of the corporation or limited liability company in the rendering of professional services.

FIRM, they are joined together as tortfeasor and will be referenced together as "defendant" or "LLABONA."

## JURISDICTION

8. Subject matter jurisdiction is vested in this Court inasmuch as the plaintiff is seeking monetary damages in excess of $15,000, excluding interest, costs and attorney's fees.

9. Personal Jurisdiction, over LLABONA is vested in Florida inasmuch as she is a citizen of the State of Florida and a residence of Orange County, Florida.

10. Personal jurisdiction over the FIRM is vested inasmuch as it is a professional corporation organized and existing under the constitution and laws of the State of Florida, within the territorial jurisdiction of Orange County, Florida.

## VENUE

11. Venue is vested in and proper in Orange County, Florida inasmuch as the cause of action accrued within the territorial confines of Orange County.

## BACKGROUND

12. The most insidious enemy to the American Judicial system is when an Officer of the Court perpetrates a fraud upon the Court. The Courts recognize that fraud upon the Court is vastly different than the intrinsic fraud that occurs amongst litigants. This is demonstrated by the requirements of the law in overturning these vastly different types of fraud.[2] The Judicial system routinely exposes, through the

---

[2] One year for fraud. Unlimited time for fraud upon the Court. (Fl. Rules of Civ. Pro. 1.540(b))

adversarial process with an unbiased trier of fact, fraud amongst the parties. It doesn't matter if the Court is Domestic Relations or The Supreme Court, extrinsic fraud upon the Court removes the moral authority for a Court's decision. Because of the inability to second guess what a Court would have decided if an affirmative fraud upon the Court had not been committed to prejudice it, the law dictates all orders are void from said Court. This present case has multiple instances of affirmative fraud committed by attorney LLABONA, an officer of the Court.

13. In the last quarter of 2005, plaintiff's former wife consulted and retained LLABONA on her behalf to file a Motion for Contempt and Enforcement,[3] "2005 MOTION", against the plaintiff. On or about November 29th, 2005, LLABONA filed said motion in the Circuit Court of the Ninth Judicial Circuit for Orange County Florida. This was concerning case number 48-2002-DR-1577-O.

14. In her 2005 MOTION, LLABONA quoted from an Order on Verified Motion to Compel and for Sanctions,[4] "2003 ORDER", that was entered by the Honorable George A. Sprinkel, IV in October 2003. Paragraph 5 of this Order states:

> The *Former Wife* is to immediately obtain health insurance for the minor children of the parties. The Former Husband will be fully responsible for the costs and expenses associated with the purchase and upkeep of this insurance as an additional form of child support.

---

[3] Exhibit "A".

[4] Exhibit "B"

> The *Former Wife* will immediately forward the bill for this insurance to the Former Husband, who will promptly pay this obligation immediately upon its receipt. *(Emphasis added.)*

15. The defendant purposely changed who's responsibility it was to provide health insurance for the minor children, from the 2003 ORDER. Although LLABONA refers to this order multiple times, the only place in the 2005 MOTION where she quotes directly from it is in Section 6, Health Benefits for Children where she states the following:

> Pursuant to Paragraph 5 of that Order, the *Former Husband* was ordered to "...immediately obtain health insurance for the minor children of the parties. The Former Husband will be fully responsible for the cost and expenses associated with the purchase and upkeep of this insurance as an additional form of child support."
> In violation of that Order, the *Former Husband* failed to provide any insurance coverage.... *(Emphasis added.)*

16. When LLABONA filed the 2005 MOTION, she knew[5] that the Judge with whom HULS would have his hearing with on, January 18th, 2006, would be the same Judge who issued the 2003 ORDER, the Honorable George A. Sprinkel, IV. By LLABONA, misrepresenting to Judge Sprinkel that not only did the plaintiff disobey a direct Court Order, but he disobeyed Judge Sprinkel's direct Court Order. Because of these actions, it was impossible for HULS to receive an impartial hearing from Judge Sprinkel.

17. LLABONA misled the Court two more times by stating the following:

---

[5] As evidenced by exhibit "C", the Notice of Hearing.

> In violation of the Final Judgment and Marital Settlement Agreement, the ***Former Husband has failed to provide any ... health insurance*** for the minor children. When ***the Former Wife brought this to the Court's attention*** at a previous hearing, the Court entered an Order on Verified Motion to Compel and for Sanctions, on October 29, 2003. ***(Emphasis added.)***

18.  While the plaintiff was responsible for health benefits for the minor children of the parties, it was never his responsibility to provide health insurance before the January 18th, 2006 hearing as LLABONA stated.

19.  The former wife also never brought this to the Court's attention as LLABONA alleged, Judge Sprinkel ordered that the former wife obtain health insurance for the minor children on his own motion.

20.  As a result of LLABONA having her thumb on the scales of Justice by committing these crimes against the "Judicial Machinery" [6] itself, Judge Sprinkel was prejudiced and never had the opportunity to make an impartial ruling on the 2005 MOTION, and the plaintiff was sentenced to 180 days in jail.

21.  After Judge Sprinkel found the plaintiff guilty of contempt, LLABONA submitted the unsigned order to the Court[7] for Judge Sprinkel to sign on February 2nd, 2006 based on her fraudulent Motion. By doing this she then made Judge Sprinkel, who was in no way culpable, an unwitting accomplice to her fraud upon the Court.

---

[6] In Bulloch v. United States, 763 F.2d 1115, 1121 (10th Cir. 1985)

[7] Exhibit "D", Order on Motion for Contempt and Enforcement

22. To exacerbate the situation which shows malice and aforethought, while HULS was in jail, LLABONA filed a Motion for Continuance on Friday, February 10th, 2006, about a hearing scheduled for the following Monday, to keep HULS in jail as long as possible, even though LLABONA knew this all began from her illegal motion.

23. HULS finally was released from jail on February 13th, 2006, and his attorney filed a Motion For Relief from Judgement that was finally approved on March 4th, 2010. (over 4 years later).

24. While LLABONA continued to be the Former Wife's counsel until April 13th, 2006, when she filed a Motion for Protective Order on March 16th, 2006, to protect the Former Wife's bank records from revealing that the plaintiff had indeed overpaid the Former Wife on all Marital Settlement Agreement items including child support for the period from the party's Final Judgement Dissolution of Marriage of October 30th, 2002 through the January 18th, 2006 hearing. In this Motion LLABONA does something very similar to her 2005 MOTION.

25. In violation of the The Florida Bar's Rules Regulating the Florida Bar, Rule 4-3.3 (a) (1), LLABONA makes a "...false statement of law to a tribunal" to win her Motion. She cites as precedence for her argument that child support arrearages were res judicata, with the following:

> 7. The Former Husband had ample opportunity to conduct discovery and accumulate his evidence prior to the hearing. He does not have the right to do so after the hearing.

> The appellate court in the Fifth District has held that that [sic] portion of a contempt order involving the calculation of support arrearages is a final order, so that the doctrine of res judicata precludes the losing party (the Former Husband in the instant Case) from relitigating [sic] the calculation in a later stage of the proceeding. See Department of Health & Rehabilitative Servs. v. Beckwith. 624 So.2d 395 (Fla. 5th DCA 1993) (3).

26. The Fifth District Court of Appeals had the exact opposite finding than what LLABONA's case citation indicated. The Fifth District Court stated at the beginning of its opinion what it's ruling on this case would explain:

> Whether a trial court has authority to withdraw and render void a previous civil contempt order or amendment to the order depends upon whether such an order may be classified as a final or a non-final order.

27. The Fifth District Court went on to explain that its ruling was exactly the opposite of what LLABONA was promoting in her Motion:

> ...[T]his court did not rule that every order of contempt is a final order not subject to later vacation or modification.[8] [in relating to HRS v. Wood]
> ...Because of its very nature, a civil contempt order that imposes incarceration must be subject to revocation or modification by the trial court after imposition.
> The trial court must continue to have jurisdiction so that the incarcerated person may be set free upon compliance with the contempt order, or perhaps to modify the order in the event that partial compliance justifies modification. Elimination of that authority as is suggested by the appellant would adversely affect the support enforcement system. Florida courts have recognized that a civil contempt order is interlocutory.

---

[8] Department of Health and Rehabilitative, Office of Child Support Enforcement v. Wood, 600 So.2d 1298, 1300 (Fla. 5th DCA 1992)

> ...The Fourth District has ruled specifically that an order of civil contempt is reviewable as a non-final order under rule 9.130(a)(3)(C), Florida Rules of Appellate Procedure.
> ...The Third District in Stewart v. Mussoline, 487 So.2d 96 (Fla. 3d DCA 1986), declined to follow the Fourth District cases cited above, but found that the court has jurisdiction to review (apparently non-final) action holding one in contempt by way of certiorari.
> ...We hold that a civil contempt order imposing incarceration as an inducement to performance of the act required by the trial court entered pursuant to a post-dissolution support enforcement proceeding is reviewable as a non-final order entered after a final order pursuant to rule 9.130(a)(4), Florida Rules of Appellate Procedure. The order, being non-final, does not constitute an order that is res judicata as to the contempt, and, absent an appeal, the trial court retains jurisdiction to modify or vacate it. ... Accordingly, we hold that the trial court did not err in vacating the contempt orders.

28. The Fifth District Court of Florida had the exact opposite finding than what LLABONA's "false statement of...law" portrayed. For LLABONA to claim that the Fifth District Court of Florida held that arrearage amounts in civil contempt hearings are final and res judicata based on this case she cited is a fraudulent legal argument. LLABONA knew or should have known that the case she cited supports the exact opposite conclusion from the conclusion she advanced, hence LLABONA'S motivation for the initial 2005 MOTION has to be a bit more sinister than incompetence or negligence.

29. As a de facto prosecutor when it comes to child support enforcement, the defendant has a responsibility to seek not just her client's advantage, but also

justice and equity. In Florida, this is required by any criminal prosecutor[9]. This is impossible to do as long as she is able to defraud the Courts.

## DAMAGES

30. As a result of being incarcerated for the first time ever, on January 18th, 2006, through February 13th, 2006, the plaintiff has suffered from shame, embarrassment, mental anguish, loss of freedom of movement and the loss of freedoms guaranteed to every citizen under Article I, Section 2 and 9 of the Florida Constitution and under the 5th and 14th amendments to United States Constitution including a loss of freedom without due process.

31. The Plaintiff also caught staphylococcus while incarcerated which has continued to flare up since and would disappear with medical treatment. Although he served 27 days of a 180 day sentence, he still believed that he could be forced to serve the rest of the sentence for an even greater loss. This belief ceased on March 4th, 2010.

32. Because of the potential for going back to jail for the past four years, the plaintiff has suffered undue stress and mental anguish, insomnia, and nervousness, loss of capacity for the enjoyment of life, and fear of the loss of freedom. The plaintiff assesses the monetary value of being incarcerated, including the medical, mental, and emotional problems to be equal to $2,000 per day for the 27 days incarcerated, for a base of $54,000 for the incarceration.

---

[9] Rule 4-3.8 in Rules Regulating the Florida Bar.

33. The plaintiff has accumulated substantial professional fees and expenses in the litigation with the Former Wife as a direct result of the actions of the defendant. These costs total [10] $ 35,180.85.

## COUNT I

## FRAUD UPON THE COURT BY PROFESSIONAL NEGLIGENCE [11]

34. The plaintiff re-avers, reiterates and incorporates by reference averments in paragraphs 1 through 33 with the same force and effect as if fully set forth here and at length and further pleads as follows:

35. LLABONA proximately caused plaintiff's incarceration without legal authority and under color of law through intentional negligence and tortious acts.

36. As a direct and proximate result of the acts described herein, plaintiff has suffered damages in excess of $15,000 excluding interest, costs, and attorney's fees.

37. As a direct and proximate result of the acts described herein, plaintiff seeks PUNITIVE damages, to make an example of LLABONA for conduct that was intentional and acted in a reckless manner in disregard for the rights of others. Defendant requests these to deter future actions in kind by defendant and others in similar situations.

38. Plaintiff requests trial by jury for all issues so triable.

---

[10] Exhibit "E" is a composite of the underlying professional statements of expenses.

[11] Under Chapters 621 and 768 of the Florida Statutes and The Rules of The Florida Bar.

**WHEREFORE**, plaintiff CLARK A. HULS prays for entry of judgment against LUSAN C. LLABONA et. al., including award of any and all ascertainable damages, including PUNITIVE, as well as any other legal or equitable relief that the Court deems just and proper.

## COUNT II

## FRAUD UPON THE COURT

## THROUGH SIMULATED LEGAL PROCESS [12]

39. The plaintiff re-alleges, reiterates and incorporates by reference allegations in paragraphs 1 through 33 with the same force and effect as if fully set forth here and at length and further pleads as follows:

40. LLABONA proximately caused plaintiff's incarceration without legal authority and under color of law through the criminal acts described herein.

41. As a direct and proximate result of the acts described herein, plaintiff seeks treble damages in the amount of $267,542.55, excluding interest, costs, and attorney's fees.

42. Plaintiff requests trial by jury for all issues so triable.

**WHEREFORE**, plaintiff CLARK A. HULS prays for entry of judgment against LUSAN C. LLABONA et. al., including award of any and all ascertainable damages, as well as any other legal or equitable relief that the Court deems just and proper.

---

[12] The 2005 Florida Statutes-843.0855 and 772.101(1)(a) 29

# COUNT III

# FRAUD UPON THE COURT

# THROUGH MANUFACTURING EVIDENCE [13]

39. The plaintiff re-alleges, reiterates and incorporates by reference allegations in paragraphs 1 through 33 with the same force and effect as if fully set forth here and at length and further pleads as follows:

40. LLABONA proximately caused plaintiff's incarceration without legal authority and under color of law through the criminal acts described herein.

41. As a direct and proximate result of the acts described herein, plaintiff seeks treble damages in the amount of $267,542.55, excluding interest, costs, and attorney's fees.

42. Plaintiff requests trial by jury for all issues so triable.

**WHEREFORE**, plaintiff CLARK A. HULS prays for entry of judgment against LUSAN C. LLABONA et. al., including award of any and all ascertainable damages, as well as any other legal or equitable relief that the Court deems just and proper.

DATED March 9th, 2010

CLARK A. HULS, pro se
2862 Pine Avenue
Mims, FL 32754
Telephone: (407) 466-9018
Facsimile: (813) 944-4942
E-mail address: llabonalawsuit@gmail.com

---

[13] The 2005 Florida Statutes-918.13 and 772.101(1)(a) 34