IN THE CIRCUIT COURT OF THE
NINTH JUDICIAL CIRCUIT, AND
FOR ORANGE COUNTY, FLORIDA

CASE NO.: 2010-CA-006319-O

CLARK A. HULS, a natural person,

    Plaintiff,

    -vs-

LUSAN C. LLABONA, Esquire,

A natural person, and

LUSAN C. LLABONA, P.A.,

A professional service corporation, et al.,

    Defendants.

## FIRST AMENDED VERIFIED COMPLAINT

    **COMES NOW** the plaintiff, CLARK A. HULS, pro se, to bring complaint to the above-styled Court, of actions undertaken by LUSAN C. LLABONA, Esquire, and LUSAN C. LLABONA, P. A. That entitles him to legal remedy.  In support thereof, plaintiff states:

### JURISDICTION

    1.    Subject matter jurisdiction is vested in this Court inasmuch as the plaintiff is seeking monetary damages in excess of $15,000, excluding interest, costs and attorney's fees.

HULS v. LLABONA

2.     Personal Jurisdiction, over Ms. Llabona is vested in Florida inasmuch as she is a citizen of the state of Florida and a resident of Orange County, Florida.

3.     Personal jurisdiction over the FIRM is vested inasmuch as it is a professional corporation organized and existing under the constitution and laws of the state of Florida, within the territorial jurisdiction of Orange County, Florida.

## VENUE

4.     Venue is vested in and proper in Orange County, Florida inasmuch as the cause of action accrued within the territorial confines of Orange County.

## THE PARTIES

5.     Plaintiff CLARK A. HULS ("Mr. Huls" or "plaintiff") is a natural person domiciled and living in the territorial confines of Brevard County, Florida.

6.     Defendant LUSAN C. LLABONA, Esquire, ("Ms. Llabona" or "defendant") is a natural person. She is an employee, president, and registered agent of Lusan C. Llabona, P.A.. She is domiciled and living within the territorial jurisdiction of Orange County, Florida.

7.     Defendant LUSAN C. LLABONA, P. A., "FIRM" is a professional corporation organized and existing under the Constitution and Laws of the State of Florida, within the territorial jurisdiction of Orange County, Florida. Because FIRM is fully liable for the defendant's actions per Florida Statute 621.07, up to the entire value of said FIRM, they are joined together as tortfeasor and will be referenced together as "defendant" or "Ms. Llabona."

## NATURE OF THE ACTION

8.    This is a civil action for violations of statutory and constitutional law cognizable under the 14th amendment to United States Constitution, 42 USC§1983, and Article I, Section 9 of the Constitution of the state of Florida about due process.

9.    2005 and 2006 State of Florida statutes; Chapters 621, 772, 768, 843, and 918.

10.   The Florida Bar's Rules Regulating the Florida Bar; Rule 4-3.3(a)(1), Rule 4-3.3(a)(4), Rule 4-3.4(b), and Rule 4-3.5(a).

## BACKGROUND

11.   Mr. Huls was divorced slightly more than three years when his former wife consulted Ms. Llabona, who is an attorney.  On November 16th, 2005, Mr. Huls' former wife hired Ms. Llabona to represent her in Family Court to file a Motion for Contempt and Enforcement, ("2005 Motion", Exhibit "A"), against Mr. Huls.

12.   "I . . . will never seek to *mislead the judge* or jury by any artifice or *false statement of fact* or law," Ms. Llabona stated in her Oath to become an attorney in Florida.  Ms. Llabona violated that very oath by seeking to mislead Judge George A. Sprinkel in a hearing on January 18th, 2006.  At the time of this hearing, Ms. Llabona's client was not abiding by, and had never obeyed a previous court order issued by Judge Sprinkel on October 31st, 2003.  Ms. Llabona, an

officer of the court, sought to pervert justice by misrepresenting what this Order on

Verified Motion to Compel and for Sanctions, ("2003 Order", Exhibit "B"),

required of her client. Her client's responsibility is revealed in this quote from the

2003 Order signed by Judge Sprinkel:

> 5. The Former *Wife is* to immediately obtain health insurance
> for the minor children of the parties. The Former Husband will be
> fully responsible for the costs and expenses associated with the
> purchase and upkeep of this insurance as an additional form of child
> support. The Former Wife will immediately forward the bill for this
> insurance to the Former Husband, who will promptly pay this
> obligation immediately upon its receipt. *(Emphasis added)*

13.    In her 2005 Motion, Ms. Llabona intentionally rearranged the third

and fourth words of the above 2003 Order to substitute the responsibility for

obtaining the children's health insurance from her client to Mr. Huls:

> *Pursuant to Paragraph 5 of that Order,* the Former *Husband
> was ordered* to ". . . immediately obtain health insurance for the minor
> children of the parties. The Former Husband will be fully responsible
> for the cost and expenses associated with the purchase and upkeep of
> this insurance as an additional form of child support."
>     In violation of that Order, the Former Husband failed to provide
> any insurance coverage. As a result, the Former Wife has had to incur
> medical, prescription, and other health related expenses for the minor
> children  .  .  .. The Former Husband should be ordered to pay said
> expenses as well as to provide health insurance coverage, as
> previously ordered by this Court. *(Emphasis added)*

14.    In her 2005 Motion, Ms. Llabona correctly recited over 95% of the 44

words in the two sentences of the 2003 Order from which she quoted. Ms. Llabona

misleads the Court by claiming Mr. Huls was responsible for obtaining the

HULS v. LLABONA

children's health insurance which was *never* required of him. Ms. Llabona reiterates this falsehood two additional times by saying Mr. Huls was in "violation of that Order" and by stating this obligation for Mr. Huls to obtain the children's health insurance was "previously ordered by this Court." By signing her pleadings, Ms. Llabona is indicating that she knows that they are true before she files them on behalf of her clients.[1] While there are times an attorney's clients could mislead her, this case could not be one of them since Ms. Llabona was quoting from a court order which is public record and she was not relying on her client's claims.

15. When Ms. Llabona filed her fraudulent 2005 Motion, she knew[2] that the Judge with whom Mr. Huls would appear before would be the same Judge who issued the 2003 Order, Judge Sprinkel. At this hearing, Judge Sprinkel was prejudiced by Ms. Llabona's felonious and fraudulent claims, and the judge relying on an officer of the court's assertions believed that Mr. Huls was not being truthful when he told the court he was not obligated to obtain health insurance but only to pay for it. Because of being influenced by the felonious influence of Ms. Llabona, the court sentenced Mr. Huls to 180 days in jail without giving Mr. Huls any credit in his denials of the allegations and a chance to exonerate himself on the claims by Ms. Llabona and her client that he was in arrears for child support.

16. "Judges rely on attorneys as officers of the Court representing to the Court that they have investigated the case. They have a greater responsibility than

just as a[n] advocate for their client[3]. . . ." As an attorney, Ms. Llabona was not responsible for handling her case any different *within the rules* because Mr. Huls was pro se. However, she does have a responsibility to the judicial system to not commit fraud. The Supreme Court of Florida requires all attorneys to have high ethical standards so as not to jeopardize the public trust which is crucial for allowing the "scales of justice" to be balanced.[4] By creating and using this fraudulent evidence Ms. Llabona effectively put her thumb on the "scales of justice".

17. Ms. Llabona prejudiced the court by *making* her 2005 Motion have the appearance of quoting from Judge Sprinkel's prior 2003 Order. This is manufacturing evidence and violated the 2005 Florida Statute 918.13(1)(b)[5] which is a felony. Ms. Llabona committed a second felony under this same statute, 918.13(1)(b), when she *presented* her fraudulent 2005 Motion to Mr. Huls. Ms. Llabona committed her third felony under this same statute, 918.13(1)(b), when she *used* her fraudulent 2005 Motion in court to win a judgement. Under a separate statute Ms. Llabona committed her fourth felony when she took her fraudulent 2005 Motion and instituted legal action against Mr. Huls under "color of law". This is in violation of the 2005 Florida Statute 843.0855(3).[6] Ms. Llabona committed her fifth felony and violated this statute 843.0855(3), again when she prepared the Order On Motion For Contempt And Enforcement, (Exhibit "D",

"2006 Order"), and presented it to Judge Sprinkel for him to sign "knowing or having reason to know the contents . . ." of this order to be false.

18.   In this 2006 Order Ms. Llabona stated falsely that;

(a)  Mr. Huls was required to provide health insurance for the minor child;

(b)  Mr. Huls has refused to pay out-of-pocket medical expenses for the child;

(c)  Mr. Huls' former wife has incurred $1,000 in medical bills for the minor children, (no medical receipts for the children were ever presented to the court);

(d)  Mr. Huls failed to provide dental insurance for the minor child; and

(e)  Mr. Huls was required to pay attorney's fees directly to Ms. Llabona (according to the court clerk's minutes, Mr. Huls was to reimburse his former wife for the attorney's fees).

19.   The acts Ms. Llabona did would be considered egregious if performed by any member of the public.  Since Ms. Llabona fraudulently manufactured this evidence and submitted it to the Court, she had to believe that it would have a material effect on the Judge's decision.  Any one of the previous felony violations in her line of work would be enough to indicate Ms. Llabona's professional negligence or indifference.  Ms. Llabona is also guilty of the intentional tort of false imprisonment and intentional infliction of emotional distress based on the foreseeable consequences she put into motion.  These aforementioned felonies are violations of The Florida Bar's Rules that attorneys who practice in Florida are

HULS v. LLABONA

obligated to. The rule numbers Ms. Llabona violated are 4-8.4(a), 4-8.4(b), 4-8.4 (c), and 4-8.4(d)[7] among others. By fraudulently creating this evidence she also is guilty of depriving Mr. Huls of his civil rights of due process guaranteed under the 14th Amendment to the U. S. Constitution by prejudicing the Judge against Mr. Huls before the hearing with a fraudulent narrative. The U. S. Supreme Court, concerning the 14th Amendment to the United States Constitution and U.S.C. 42§1983 stated, "Procedural due process rules are meant to protect persons . . . from the mistaken or unjustified deprivation of life, liberty, or property" and "to convey to the individual a feeling that the government has dealt with him fairly."[8]

20.    Because Ms. Llabona committed these felonies, Mr. Huls could not receive a fair hearing and was sentenced to 180 days in jail. Mr. Huls was released from jail after 27 days when Judge Sprinkel suspended the sentence for 60 days based on a motion and partial evidence from Mr. Troum, his new attorney. The sentence was suspended for 60 days so Mr. Huls could obtain more proof that he had indeed paid his former wife far more than what she had testified to at the January 18th, 2006 hearing.

21.    This violation of fundamental fairness was initiated by Ms. Llabona's fraudulent document; Ms. Llabona's prejudicial influence of the Judge with her false 2005 Motion; and Ms. Llabona's failure to her responsibility as an officer of the court to reveal the truth. Because of Ms. Llabona's actions Mr. Huls is entitled to compensation;

(a) for being incarcerated for 27 days;

(b) for trauma to his person including catching staphylococcus;

(c) for emotional distress while in jail;

(d) for emotional distress after his release from jail in February 2006, for four years due to the remaining 153 days of his sentence still outstanding;

(e) For paranoia experienced when some people are above the law in a country where everyone is supposed to be equal; and

(f) for the money he paid to professionals for his defense stemming from the 2005 Motion over the following four years.

22.    No foreseeable damage other than loss of a small amount of Mr. Huls' time would have happened if Ms. Llabona had stopped after any one of the following steps, except for the last one.   This claim came about because Ms. Llabona;

(a) made her fraudulent 2005 Motion which was completed when she signed it;

(b) presented her fraudulent 2005 Motion to Mr. Huls and to the Court;

(c) used her fraudulent 2005 Motion in Court against Mr. Huls;

(d) initiated a legal process against Mr. Huls based on her fraudulent 2005 Motion; and

(e) had Judge Sprinkel sign the fraudulent 2006 Order which she created based on her fraudulent 2005 Motion.

23.    There were at least two reasons Ms. Llabona created her fraudulent 2005 Motion.  The first reason is because Mr. Huls' former wife never obtained this health insurance for the children, as required of her by the 2003 Order. Therefore she had "unclean hands".   Unclean hands is the old judicial doctrine "that is founded in honesty and good sense [and] rebukes fraud[9]. . . ."  Her client could then come to court and make a claim against Mr. Huls seemingly as the victimized petitioner.  Ms. Llabona also knew her client could have been sentenced to jail for contempt of court for disobeying the 2003 Order.

24.    The second reason Ms. Llabona willfully misrepresented the 2003 Order was because she was seeking to get a substantial judgement against Mr. Huls, not for the children's medical bills, but for her client's medical bills.   Mr. Huls was *never* obligated to pay any of his former wife's medical bills once their divorce became final in 2002.   By willfully implemented this affirmative fraud, Ms. Llabona was able to blend the children's medical bills, (approximately $800), with the former wife's medical bills, (approximately $17,500 including two receipts totaling more than $11,000 that were fraudulent),[10] and obtain a total judgement of over $18,500 for medical bills.

25.    In February 2006 Mr. Huls' attorney, Mr. Troum filed a motion to have a hearing to attempt to have Mr. Huls released from jail.  The hearing was set for February 13th, 2006.   On Friday, February 10th, 2006, Ms. Llabona filed a Motion for Continuance to postpone the hearing.    If this motion had been

approved, Mr. Huls' opportunity to be released from jail would have been delayed and he would have stayed in jail even longer. Judge Sprinkel denied this motion and the hearing took place as scheduled.

26.     Prior to the hearing on January 18th, 2006, and continuing after Mr. Huls was released from jail, he sought numerous financial records to prove he had paid his former wife more than what she had testified to, and that he was wrongly incarcerated. To prove this he needed access to his former wife's bank accounts, for which his attorney filed a subpoena duces tecum. Although she had previously agreed for this discovery to be made, Ms. Llabona then filed a Motion For Protective Order on March 16th, 2006, to prevent her client's bank accounts from being accessed by Mr. Huls.[11] Because Ms. Llabona filed her initial 2005 Motion and had benefitted from the false allegations stated above, she had a duty to provide the necessary supporting documentation at this time. This motion to try to conceal this evidence is consistent with her intention to create, omit, or hide material evidence from Judge Sprinkel that he would need to make a just decision. This Motion included two "false statement[s] of . . . Law," to mislead[12] Judge Sprinkel into granting her motion. She stated;

I.   The time to appeal the orders entered by the Court [on January 18th, 2006] has also lapsed; and
II.  The appellate court in the Fifth District [of Florida] has held that that portion of a contempt order involving the calculation of support arrearages is a final order, so that the doctrine of res judicata precludes the losing party (the Former Husband in the instant Case) from relitigating the calculation in a later stage of the

proceeding. See *Department of Health & Rehabilitative Servs. v. Beckwith*, 624 So.2d 395 (Fla. 5th DCA 1993).

27. Ms. Llabona cited *HRS v. Beckwith* as precedent, a court case that she stated does not allow civil contempt arrearages to be modified. In actuality, *HRS v. Beckwith* shows how, by their very nature of being temporary, all aspects of civil contempt judgements are able to be modified.

## DAMAGES

28. As a result of being incarcerated for his first time ever, on January 18th, 2006, through February 13th, 2006, Mr. Huls has suffered from shame, embarrassment, mental anguish, loss of freedom of movement, and the loss of freedoms guaranteed to every citizen under Article I, Section 9 of the Florida Constitution and under the 14th amendments to United States Constitution including a loss of freedom without due process.

29. Because of his incarceration due to Ms. Llabona's fraud, Mr. Huls also caught staphylococcus while incarcerated which has continued to flare up since and would disappear with medical treatment. As an indication of the stress Mr. Huls was under the day of his incarceration, although Mr. Huls had already taken his blood pressure medicine in the morning, approximately nine hours after he had been taken in to custody his blood pressure was checked and was approximately 255/180. Other than this case, Mr. Huls has no criminal record in his entire 45 years of life. Other than this case, Mr. Huls had never before had his mugshot or

fingerprints put on file. The impact of the 27 days Mr. Huls served in jail for Ms. Llabona's fraudulent allegations destroyed Mr. Huls' sense of security as a citizen. For the next four years he lived with the dread of returning to jail because his sentence was only suspended for 60 days. He feared he would have to complete the remaining 153 days of his sentence at any time which would destroy his personal life and career. If he was unable to prevail in this litigation he could go to back to jail.

30.    Because of his incarceration due to Ms. Llabona's fraud, Mr. Huls suffered emotionally, lost ability to function in normal manners.    This also interfered with his relationships, damaged relationships, and became frantic and obsessed with staying out of jail. Because of the potential for going back to jail for the past four years, Mr. Huls has suffered undue stress, emotional distress, mental anguish, paranoia, insomnia, nervousness, loss of capacity for the enjoyment of life, and fear of the loss of freedom. Mr. Huls assesses the monetary value of being incarcerated, including the medical, mental, and emotional problems to be equal to $3,000 per day for the 27 days incarcerated, for a base of $81,000 for the incarceration.

31.    Mr. Huls assesses the monetary value of being incarcerated, including the medical, mental, and emotional problems which include paranoia as since the time of being released from jail on February 13th, 2006 through March 4th, 2010 to be equal to $1,000 per month or a total of $48,000.

32. Mr. Huls has accumulated substantial professional fees and expenses in the litigation with his former wife as a direct result of the actions of the defendant. Through March 1st, 2010, these costs total $35,043.35 which is reflected in Exhibit "E".

## COUNT I

## DEPRIVATION OF CIVIL RIGHTS BY INTENTIONAL MISCONDUCT [13]

33. The plaintiff re-avers, reiterates and incorporates by reference averments in paragraphs 1 through 32 with the same force and effect as if fully set forth here and at length and further pleads as follows:

34. Ms. Llabona proximately caused Mr. Huls' incarceration without legal authority and under color of law through intentionally negligent and tortious acts. Additionally she caused Mr. Huls to expend a significant amount of resources to disprove her fraudulent machinations.

35. As a direct and proximate result of the acts described herein, plaintiff has suffered damages more than $15,000 excluding interest, costs, and attorney's fees.

36. As a direct and proximate result of the acts described herein, plaintiff seeks PUNITIVE damages, to make an example of Ms. Llabona for conduct that was intentional, criminal, and in reckless disregard for the rights of others. The plaintiff requests these PUNITIVE damages to deter future actions in kind by defendant and others in similar situations.

HULS v. LLABONA

37.    Plaintiff requests trial by jury for all issues so triable.

**WHEREFORE**, plaintiff CLARK A. HULS prays for entry of judgment against LUSAN C. LLABONA et al., including award of any and all ascertainable damages, including PUNITIVE, as well as any other legal or equitable relief that the Court deems just and proper.

## COUNT II

### 42 U.S.C. §1983 (DEPRIVATION OF CIVIL RIGHTS)

38.    The plaintiff re-avers, reiterates and incorporates by reference averments in paragraphs 1 through 32 with the same force and effect as if fully set forth here and at length and further pleads as follows:

39.    Ms. Llabona proximately caused Mr. Huls' incarceration without legal authority and under color of law through intentionally negligent and tortious acts. Additionally she caused Mr. Huls to expend a significant amount of resources to disprove her fraudulent machinations.

40.    As a direct and proximate result of the acts described herein, plaintiff has suffered damages more than $15,000 excluding interest, costs, and attorney's fees.

41.    As a direct and proximate result of the acts described herein, plaintiff seeks PUNITIVE damages, to make an example of Ms. Llabona for conduct that was intentional, criminal, and in reckless disregard for the rights of others. The

plaintiff requests these PUNITIVE damages to deter future actions in kind by defendant and others in similar situations.

42.    Plaintiff requests trial by jury for all issues so triable.

**WHEREFORE**, plaintiff CLARK A. HULS prays for entry of judgment against LUSAN C. LLABONA et al., including award of any and all ascertainable damages, as well as any other legal or equitable relief that the Court deems just and proper.

## COUNT III

### CIVIL REMEDIES FOR CRIMINAL PRACTICES

43.    Mr. Huls re-alleges, reiterates and incorporates by reference allegations in paragraphs 1 through 32 with the same force and effect as if fully set forth here and at length and further pleads as follows:

44.    Ms. Llabona proximately caused Mr. Huls' incarceration without legal authority and under color of law through the criminal acts described herein. Additionally she caused Mr. Huls to expend a significant amount of resources to disprove her fraudulent machinations.

45.    Florida Statute 772.104[14] allows for treble damages for injuries pursuant to this statute separate from common law torts. This statute also allows for duplicate attorney's fees and costs.

46.    As a direct and proximate result of the acts described herein, plaintiff

seeks treble damages in the amount of $492,130.05, (listed in endnote six, seven,

and thirteen), excluding interest, costs, and attorney's fees.

47.    Plaintiff requests trial by jury for all issues so triable.

**WHEREFORE**, plaintiff CLARK A. HULS prays for entry of judgment

against LUSAN C. LLABONA et al., including award of any and all ascertainable

damages, as well as any other legal or equitable relief that the Court deems just and

proper.

I declare under penalty of perjury that the foregoing is true and correct.

I HEREBY CERTIFY that a true and correct copy of the forgoing has been
furnished via U. S. Mail and facsimile this _26_ of March 2010 to Marjorie
Hensel, Esquire, at 201 East Kennedy Blvd. Suite 1100, Tampa, FL 33602
Facsimile number (813)472-7811.

Executed on March _26_, 2010, by _____.

CLARK A. HULS, pro se
2862 Pine Avenue
Mims, FL 32754
Telephone: (407) 466-9018
Facsimile: (813) 944-4942
E-mail address: llabonalawsuit@gmail.com

STATE OF FLORIDA

COUNTY OF _Orange_

Upon penalty of perjury the foregoing instrument was signed before me as
being true and correct this _26_ day of March 2010, by CLARK A. HULS, who
has produced his Florida Drivers License, number H420-XXXX-64-182-0 as
identification.

_____

NOTARY PUBLIC, State of Florida

HULS v. LLABONA

[1] Florida Bar rules 4-3.3 Commentary

[2] Exhibit "C", Ms. Llabona's Notice of Hearing

[3] *The Florida Bar v. Corbin*, 701 So. 2d 334 - Fl. Supreme Court (1997)

[4] *Florida Bar v. Valentine-Miller,* 934 So. 2d 451 (Fla. 2006), "Lawyers are required to have high ethical standards . . . ."
*Dodd v. The Florida Bar*, 118 So. 2d 17 (Fla. 1960), reminds us that "the courts are . . . dependent on members of the bar to . . . present the true facts of each cause . . . to enable the judge or the jury to [decide the facts] to which the law may be applied. When an attorney . . . allows false testimony . . . [the attorney] . . . makes it impossible for the scales [of justice] to balance."

[5] **918.13 Tampering with or fabricating physical evidence.—**
(1) No person, knowing that a criminal trial or proceeding or an investigation by a duly constituted prosecuting authority, law enforcement agency, grand jury or legislative committee of this state is pending or is about to be instituted, shall:
    (a) Alter, destroy, conceal, or remove any record, document, or thing with the purpose to impair its verity or availability in such proceeding or investigation; or
    (b) ***Make, present, or use any record, document, or thing, knowing it to be false.***
(2) Any person who violates any provision of this section shall be guilty of a felony of the third degree, punishable as provided in s. 775.082, s. 775.083, or s. 775.084.
(2005) *(Emphasis added)*

[6] **843.0855 Criminal actions under color of law or through use of simulated legal process.—**
(1) As used in this section:
    (a) The term "legal process" means a document or order issued by a court or filed or recorded for the purpose of exercising jurisdiction or representing a claim against a person or property, or for the purpose of directing a person to appear before a court or tribunal, or to perform or refrain from performing a specified act. "Legal process" includes, but is not limited to, a summons, lien, complaint, warrant, injunction, writ, notice, pleading, subpoena, or order.
    (b) The term "person" means an individual, public or private group incorporated or otherwise, legitimate or illegitimate legal tribunal or entity, informal organization, official or unofficial agency or body, or any assemblage of individuals.
    . . .
(3) Any person who simulates legal process, including, but not limited to, actions affecting title to real estate or personal property, indictments, subpoenas, warrants, injunctions, liens, orders, judgments, or any legal documents or proceedings, *knowing or having reason to know the contents of any such documents or proceedings or the basis for any action to be fraudulent*, commits a felony of the third degree, punishable as provided in s. 775.082 or s. 775.083.
(4) Any person who falsely under color of law attempts in any way to influence, intimidate, or hinder a public officer or law enforcement officer in the discharge of his or her official duties by means of, but not limited to, threats of or actual physical abuse or harassment, or through the use of simulated legal process, commits a felony of the third degree, punishable as provided in s. 775.082 or s. 775.083.

[7] **RULE 4-8.4 MISCONDUCT**
A lawyer shall not:
(a) violate or attempt to violate the Rules of Professional Conduct, knowingly assist or induce another to do so, or do so through the acts of another;
(b) commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness, or fitness as a lawyer in other respects;
(c) engage in conduct involving dishonesty, fraud, deceit, or misrepresentation . . . ;
(d) engage in conduct in connection with the practice of law that is prejudicial to the administration of justice, including to knowingly, or through callous indifference, disparage, humiliate, or discriminate against litigants, jurors, witnesses, court personnel, or other lawyers on any basis, including, but not limited to, on account of race, ethnicity, gender, religion, national origin, disability, marital status, sexual orientation, age, socioeconomic status, employment, or physical characteristic;

[8] *Carey v. Piphus*, 435 U. S. 247 (1978) and *Joint Anti-Fascist Committee v. McGrath*, 341 U. S. 123, 341 U. S. 172 (1951)

[9] *Manhattan Medicine Co. v. Wood,* 108 US 218 U. S. Supreme Court (1883)

[10]  Between February 2006 and February 2010, it would be determined by Mr. Patrick Burns CPA, (The Court's witness) that although Mr. Huls' former wife won a judgement for more than $17,500, Mr. Huls' former wife had spent less than $6,000 on her medical bills from the time the divorce was final through the hearing on January 18th, 2006.   In the latter half of 2005, Mr. Huls' former wife had incurred a substantial amount of medical bills due to breast cancer and was uninsured by her choice.

[11]  This information would later prove that Mr. Huls had given his former wife over 6 times more than what she had testified to before Judge Sprinkel.

[12]  Violation of Rule 4-3.3(a)(1) and Rule 4-3.5(a) of The Rules Regulating the Florida Bar and her Oath.

[13]  Florida Statutes 621.07 and 768.72 and Rules 4-3.3(a)(1); 4-3.3(a)(4); 4-3.4(b); and 4-3.5(a) of The Florida Bar.

[14] **772.104 Civil cause of action.—**

Any person who proves by clear and convincing evidence that he or she has been injured by reason of any violation of the provisions of s. 772.103 shall have a cause of action for threefold the actual damages sustained and, in any such action, is entitled to minimum damages in the amount of $200, and reasonable attorney's fees and court costs in the trial and appellate courts. In no event shall punitive damages be awarded under this section. The defendant shall be entitled to recover reasonable attorney's fees and court costs in the trial and appellate courts upon a finding that the claimant raised a claim which was without substantial fact or legal support. In awarding attorney's fees and costs under this section, the court shall not consider the ability of the opposing party to pay such fees and costs. Nothing under this section shall be interpreted as limiting any right to recover attorney's fees or costs provided under other provisions of law.

**772.103 Prohibited activities.—**

It is unlawful for any person:

(1) Who has with criminal intent received any proceeds derived, directly or indirectly, from a pattern of criminal activity or through the collection of an unlawful debt to use or invest, whether directly or indirectly, any part of such proceeds, or the proceeds derived from the investment or use thereof, in the acquisition of any title to, or any right, interest, or equity in, real property or in the establishment or operation of any enterprise.

(2) Through a pattern of criminal activity or through the collection of an unlawful debt, to acquire or maintain, directly or indirectly, any interest in or control of any enterprise or real property.

(3) Employed by, or associated with, any enterprise to conduct or participate, directly or indirectly, in such enterprise through a pattern of criminal activity or the collection of an unlawful debt.

(4) To conspire or endeavor to violate any of the provisions of subsection (1), subsection (2), or subsection (3).

**772.102 Definitions.—**

As used in this chapter, the term:

(1) "Criminal activity" means to commit, to attempt to commit, to conspire to commit, or to solicit, coerce, or intimidate another person to commit:

(a) Any crime which is chargeable by indictment or information under the following provisions:

. . . .

29. Chapter 843, relating to obstruction of justice.

. . . .

34. Section 918.12 or s. 918.13, relating to tampering with jurors and evidence.

. . . .

(3) "Enterprise" means any individual, sole proprietorship, partnership, corporation, business trust, union chartered under the laws of this state, or other legal entity, or any unchartered union, association, or group of individuals associated in fact although not a legal entity; and the term includes illicit as well as licit enterprises and governmental, as well as other, entities.

(4) "Pattern of criminal activity" means engaging in at least two incidents of criminal activity that have the same or similar intents, results, accomplices, victims, or methods of commission or that otherwise are interrelated by distinguishing characteristics and are not isolated incidents; provided that the last of such incidents occurred within 5 years after a prior incident of criminal activity. For the purposes of this chapter, the term "pattern of criminal activity" shall not include two or more incidents of fraudulent conduct arising out of a single contract or transaction against one or more related persons.

HULS v. LLABONA