## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

CLARK A. HULS, a natural person,    :
                                 :

         Plaintiff,           :

                                  :

     vs.                        :         Case No.: 6:10-cv-538-31GJK

                                  :

LUSAN C. LLABONA, ESQUIRE,    :
A natural person, and                :
LUSAN C. LLABONA, P.A.,        :
A professional service corporation, et al.,   :

                                  :

         Defendants,        :
_____ :

## DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT AND MOTION TO STRIKE AND MEMORANDUM OF LAW IN SUPPORT

COME NOW the Defendants, LUSAN C. LLABONA, ESQUIRE, and LUSAN C. LLBONA, P.A. (hereinafter "Defendants"), by and through their undersigned counsel and file this Motion to Dismiss the Plaintiff's First Amended Complaint and  in support thereof state as follows:

### INTRODUCTION

1.      This lawsuit arises from Defendants, Lusan Llabona's, prior representation of the Plaintiff's former wife during a child support dispute.  According to the Plaintiff's First Amended Complaint, in 2005, the Plaintiff's former wife retained Ms. Llabona, to seek enforcement of a previously entered child support order.  (Doc. #3, ¶ 11).

2.      According to the Plaintiff's Complaint, Ms. Llabona, on her client's behalf, filed a Motion for Contempt against the Plaintiff due to the fact that he had not complied with the

court's child support order.  Specifically, Ms. Llabona alleged that the Plaintiff failed to keep and pay for the minor children's health insurance.  (Doc. #3, ¶ 11).

3.      Following the hearing on the Motion for Contempt, Judge George A. Sprinkel found the Plaintiff guilty of contempt for non-payment of child support and sentenced him to 180 days in jail due to his failure to comply with the court's order.  According to the Plaintiff, he remained in jail from on or about January 18, 2006 until to on or about February 13, 2006 – twenty-six (27) days total.  (Doc. #3, ¶ 20).

4.      Over four years after he was released from jail, on or about March 9, 2010, the Plaintiff, Clark A. Huls, filed this suit against the Defendants.  The Plaintiff alleges that the Defendants violated the United States Constitution, 42 U.S.C. §1983, various Florida Statutes, and various Rules regulating the Florida Bar.  The Plaintiff's three counts are as follows:  (1) Deprivation of Civil Rights by Intentional Misconduct[1]; (2) 42 U.S.C. §1983 (Deprivation of Civil Rights); (3) Civil Remedies for Criminal Practices.  (Doc. #3).

5.      As discussed fully below, the Plaintiff's Complaint fails to adequately state any legal claim upon which relief can be granted.  The Plaintiff is attempting to sue his ex-wife's lawyer, Ms. Llabona, for allegedly making fraudulent statements during the child support hearings in connection with an alleged scheme or plan to subject the Plaintiff to wrongful incarceration.  With that said, the Plaintiff has failed to establish any legal cause of action for which the Defendants can appropriately respond.  The Plaintiff has confused a variety of causes of action, including those for civil rights violations, fraud, malicious prosecution, and legal

---

[1] Specifically, the Plaintiff attempts to bring Count I under Florida Statutes §621.07 (regarding liability of an officer or agent of a limited liability company) and §768.72 (regarding the standard for pleading punitive damages). Additionally, the Plaintiff brings Count I under Rules 4-3.3(a)(1), 4-3.3(a)(4), 4-3.4(b), and 4-3.5(a) of the Florida Bar.

malpractice in an attempt to seek recovery against the plaintiff.  For this reason, the Plaintiff's First Amended Complaint should be dismissed.

6.  Additionally, the Plaintiff's First Amended Complaint is procedurally incorrect in a number of instances.  First, the Complaint improperly seeks relief for punitive damages.  As discussed below, punitive damages can only be pled after a plaintiff proffers sufficient evidence regarding the reasonable recovery of such punitive damages.  Second, the Plaintiff's First Amended Complaint states specific requests for monetary damages, which is also improper under the Rules.  For these reasons, should the Court not dismiss the entire First Amended Complaint, the Defendants request that the prayer for punitive damages and specific amounts of monetary damages be stricken from the pleading.

## MEMORANDUM OF LAW

### A.    Motion to Dismiss Standard

Federal Rule of Civil Procedure 12(b)(6) provides that a complaint is to be dismissed if it fails to state a claim upon which relief can be granted.  A complaint should not be dismissed for failure to state a claim under Rule 12(b)(6) unless it appears beyond doubt that the plaintiff can prove no set of facts that support a claim for relief.  *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); *Bracewell v. Nicholson Air Servs., Inc.*, 680 F.2d 103, 104 (11th Cir. 1982).   In reviewing a motion to dismiss, the courts are required to view the complaint in the light most favorable to the plaintiff.  *Colodny v. Iverson, Yoakum, Papiano & Hatch*, 838 F. Supp. 572, 573 (M.D. Fla. 1993) (citing *Scheuer v. Rhodes*, 416 U.S. 232 (1974)).

However, only those allegations that are "well pleaded" need be taken as true by the Court upon ruling on a motion to dismiss.  *Showers v. City Bartow*, 978 F. Supp. 1464, 1466 (M.D. Fla. 1997) (citing *Gonzalez v. McNary*, 980 F.2d 1418, 1419 (11th Cir. 1993)).  A court

need not accept conclusory allegations or legal conclusions masquerading as factual allegations. *Fernandez-Montez v. Allied Pilots Ass'n,* 987 F.2d 278, 284 (5th Cir. 1993). To survive a motion to dismiss, a plaintiff may not merely "label" his or her claims. *Id.* (citing *Blumen v. Mylander*, 919 F. Supp. 423, 425 (M.D. Fla. 1996)). At a minimum, the Federal Rules of Civil Procedure require "a short and plain statement of the claim" that "will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley*, 355 U.S. at 47. The Court need not accept factual claims that are inherently inconsistent, facts which run counter to facts of which the Court can take judicial notice, conclusory allegations, unwarranted deductions, or mere legal conclusions asserted by a party. *Campos v. I.N.S*, 32 F. Supp 2d 1337, 1343 (S.D. Fla. 1998); *Ellen S. v. The Florida Bd. of Bar Examiners*, 859 F. Supp 1489, 1492 (S.D. Fla. 1994); *Olpin v. Ideal Nat'l Ins. Co.*, 419 F.2d 1250, 1255 (10th Cir. 1969).

### B.   Analysis

As noted above, the Plaintiff's Complaint contains three counts: (1) Deprivation of Civil Rights by Intentional Misconduct; (2) 42 U.S.C. §1983 (Deprivation of Civil Rights); and (3) Civil Remedies for Criminal Practices. (Doc. #3). The Plaintiff seeks alleged damages for the Defendants' legal representation of the Plaintiff's ex-wife which allegedly caused "the [Plaintiff's] incarceration without legal authority and under color of law through [the Defendants'] intentional negligence and tortuous acts." (Doc. 3, ¶ 34).

### i.   Plaintiff's entire first amended complaint should be dismissed under the well-established theory of litigation privilege/immunity

"[A]bsolute immunity must be afforded to any act occurring during the course of a judicial proceeding, regardless of whether the act involves a defamatory statement or…other tortious behavior…so long as the act has some relation to the proceeding." *Levin, Middlebrooks, Mabie, Thomas, Mayes & Mitchell, P.A. v. United States Fire Insurance Co.*, 639 So.2d 606, 608

(Fla. 1994).  The Eleventh Circuit has reiterated the use of Florida's absolute immunity in cases such as the one before this Court.  *Jackson, et. al. v. Bellsouth Telecommunications, et. al.*, 372 F.3d 1250, 1274 (11th Cir. 2004).  There is a strong policy argument regarding the free flow of communication during pending litigation.  *Echevarria, et. al. v. Cole*, 950 So.2d 380, 384 (Fla. 2007) (holding that "it is the perceived necessity for candid and unrestrained communications in those proceedings, free of the threat of legal actions predicated upon those communications, that is the heart of the [litigation immunity] rule").

In *Levin*, the Levin firm represented an excess insurance carrier in a bad faith action against a primary insurance carrier.  The bad faith action was based upon the alleged failure of the primary carrier to settle a personal injury action within policy limits.  The Levin firm represented the plaintiff in the underlying personal injury case.  In the bad faith action, the excess carrier listed one of the Levin attorneys as a witness, due to his involvement in the personal injury case.  The primary carrier moved to disqualify that attorney and the Levin firm certifying to the court that it intended to call the attorney as a witness at trial.  The trial court granted the motion to disqualify.  The attorney was never subpoenaed for trial.  Thereafter, the Levin firm filed suit in federal court against the primary carrier alleging that it had tortiously interfered with the Levin firm's business relationship with its client by falsely certifying to the court that it intended to call the attorney/employee as a witness at trial.  *Levin*, 639 So.2d at 607.  The primary carrier filed a motion to dismiss based upon absolute immunity.  The district court granted the motion, and the Levin firm appealed to the Eleventh Circuit.  The Eleventh Circuit certified to the Florida Supreme Court the question of absolute immunity with regard to the facts of the case.  *Id.*

In affirming the dismissal, the Florida Supreme Court reiterated its earlier ruling in *Fridovich v. Fridovich*, 598 So.2d 65 (Fla. 1992), that acts occurring during:

> the course of judicial proceedings are absolutely privileged, no matter how false or malicious the statements may be, so long as the statements are relevant to the subject of the inquiry. . .  The immunity afforded to statements made during the course of a judicial proceeding extends not only to the parties in a proceeding but to judges, witnesses, and counsel as well.

*Levin*, 639 So.2d at 607 (citations omitted).

The Court then went on to set forth the reasons underpinning its decision:

> [p]articipants in judicial proceedings must be free from the fear of later civil liability as to anything said or written during litigation so as not to chill the actions of the participants in the immediate claim.

Id. at 608 (citations omitted).

The case of *Ponzoli & Wassenberg, P.A. v. Zuckerman*, is also instructive.  In *Ponzoli*, Zuckerman contended that Ponzoli & Wassenberg, as counsel for his adversary in litigation, had committed libel and extortion during a partnership dissolution case.  The libel allegation centered on statements contained in a motion to dismiss filed by Ponzoli & Wassenberg.  Zuckerman eventually dismissed the libel and extortion case.  Ponzoli & Wassenberg then moved for fees and costs under Florida Statutes, §57.105.  The trial court denied that motion.  Ponzoli & Wassenberg appealed and obtained a reversal from the Third District Court of Appeal.  *Id.*, 545 So.2d 309, 310 (Fla. 3rd DCA 1989).

In finding that the trial court should have granted the motion for fees and costs, the Third District Court of Appeal opined:

> Doubtless many litigants harbor a desire to bring suit against their adversary's attorney….
>
> While [Zuckerman] may have been offended by the motion to dismiss the appeal, the statements were connected with, and relevant to, the matter at hand and are

therefore, absolutely privileged. These principles are so clear, and so well-known, that the defamation claim must be considered frivolous.

*Id.* at 309-310.

Additionally, Florida provides for adequate remedies in situations where wrongful conduct occurs during the course of a judicial proceeding. "[M]ost notably, the trial court's contempt power, as well as disciplinary measures of the state court system and bar association" serve as adequate remedies for any lawyer misconduct during a judicial proceeding. *Echevarria, et.al. v. Cole*, 950 So.2d 380 (Fla. 2007).

In the case before this Court, Attorney Llbona's conduct during the course of the child support and contempt judicial proceedings, including all statements made during oral argument and in her pleadings, is entitled to absolute immunity from civil litigation. Attorney Llabona's conduct at issue in this case involves her statements made during oral argument, her pleadings, and notices she filed to the Court. All these acts are related to the underlying child support/contempt judicial proceeding. Even assuming, arguendo, that the Plaintiff's allegations are true, ultimately, Judge George Sprinkel made the final determination that the Plaintiff was in violation of his prior order regarding the non-payment of child support. Even if Attorney Llabona was incorrect in arguing that it was the Plaintiff's responsibility to secure health insurance for his minor children, Judge Sprinkel, who issued the health insurance order in the first place, was in the position to know the requirements of his final order and make the determination as to whether the Plaintiff was subject to discipline for that infraction. Notwithstanding the hypothetical argument, given the fact that Attorney Llabona's conduct was related to an underlying judicial proceeding she is protected by Florida's litigation privilege. See generally *Levin* and *Echevarrria*, supra.

ii.    Counts I, II, and III should be dismissed because the Plaintiff has failed to
       allege a cause of action for deprivation of civil rights under 42 U.S.C.
       §1983

In counts I,[2] II, and II of the Plaintiff's First Amended Complaint, he seeks damages
against Attorney Llabona because she allegedly caused "Mr. Huls incarceration without legal
authority and under color of law through intentionally negligent and tortious acts." (Doc. # 3, ¶¶
34, 39, and 44). As discussed below, the Plaintiff has failed to plead a cause of action under 42
U.S.C. §1983 for deprivation of civil rights because Attorney Llabona was not acting under color
of law during the child support and contempt judicial proceedings before Judge George Sprinkel.

To maintain an action under 42 U.S.C. § 1983, a plaintiff "must prove two elements: (1)
that he was deprived of 'rights, privileges, or immunities' protected by the Constitution or federal
law; and, (2) that the deprivation was caused by a person acting under **color of law**."
*Madura v. Lakebridge Condo. Ass'n*, 2009 U.S. Dist. LEXIS 21241 (M.D. Fla. Mar. 3, 2009)
(citing *Koff v. Butterworth*, 765 F. Supp. 716, 717 (M.D. Fla. 1991).

---

[2] As an endnote to count I, the Plaintiff seems to bring the cause of action under Florida Statutes §621.07 and
§786.72. §621.07 is a statute enacted to extend liability for certain actions performed by an agent or officer of a
corporation or limited liability company. In the case before this court, the Plaintiff has alleged that Attorney
Llabona is the president and registered agent of Susan L. Llabona, LLC. With that said, for the reasons discussed in
section B(ii) of this memorandum, *supra*, regarding the Plaintiff's failure to establish "color-of-law," the Plaintiff has
not established a claim for which relief can be granted against any defendant – including Ms. Llabona, personally
and Ms. Llabona, acting as the agent or officer of the LLC defendant.

§786.72 is a statute designed to give the pleading procedures for a claim of punitive damages. In *WFTV, Inc. v.
Hinn*, 705 So. 2d 1010 (Fla. 5th DCA 1998), the Court held that before a claim for punitive damages is allowed, a
plaintiff must first comply with section 768.72, Florida Statutes, which requires an initial showing by evidence in
the record, or proffered by the plaintiff, which would provide a reasonable basis for recovery of such damages. A
plaintiff must obtain leave from the trial court to amend the Complaint before a claim for punitive damages can be
asserted. The Court further found that since the plaintiff sought punitive damages in his Complaint without first
seeking leave to amend and showing a reasonable basis for the claim, the trial court erred by not granting the Motion
to Strike as the statutory procedure was not followed. *Id.* For this reason, should this Court decide not to dismiss
the Plaintiff's First Amended Complaint, Attorney Llbona requests that this Court strike the Plaintiff's requests for
punitive damages.

"The Supreme Court has defined "acting under color of law" as acting with power possessed by virtue of the defendant's employment with the state." *Woods v. Valentino*, 511 F. Supp. 2d 1263, 1272 (M.D. Fla. 2007) (citing *West v. Atkins*, 487 U.S. 42, 49, 108 S. Ct. 2250, 101 L. Ed. 2d 40 (1988)). Several Florida federal districts have held that individuals, including attorneys, are not contemplated by the Act as they are not acting under color of law. *Brown v. Ferrer-Roo*, 2009 U.S. Dist. LEXIS 84276 (S.D. Fla. Sept. 15, 2009) (holding that a §1983 claim is not cognizable against an attorney as they are not acting under color of law); *Rolle v. Raysor*, 2007 U.S. Dist. LEXIS 67437 (N.D. Fla. Sept. 7, 2007) (holding that defendant's attorney, even if court appointed, is not acting under color-of-law).

In this case, Attorney Llbona's actions during her private representation of the Plaintiff's ex-wife in no way subject her to a §1983 claim. The Plaintiff's First Amended Complaint is completely devoid of any allegations, other than conclusory statements, that Attorney Llabona was acting under color of law sufficient to trigger to 42 U.S.C §1983. For this reason, the Plaintiff Counts I and II do not state a claim upon which relief can be granted. Attorney Llabona respectfully requests that this Court dismiss counts I, II, and III against her and award her all other relief deemed just and appropriate.

      iii.    Count III should be dismissed because the Plaintiff has failed to allege a cause of action for deprivation of civil rights under 42 U.S.C. §1983

The Plaintiff's Complaint also seems allege that Attorney Llbona committed legal malpractice or "professional negligence." (Doc. #3, ¶ 19). According to Florida law, the elements of a cause of action based upon an attorney's negligent handling of a client's case include: (1) the attorney's employment by the plaintiff (privity); 2) the attorney's neglect of a reasonable duty owed to the plaintiff; and 3) proof that such negligence resulted in and was the

proximate cause of loss to the plaintiff. *Arnold v. Carmichael*, 524 So. 2d 464 (Fla. 1st DCA 1988); *Lorraine v. Grover, Ciment, Weinstein & Stauber, P.A.*, 467 So. 2d 315 (Fla. 3d DCA 1985).   The third element regarding loss to the client is not satisfied unless the plaintiff alleges that there is an amount of damages the plaintiff would have recovered but for the attorney's negligence. *Olmsted v. Emmanuel,* 783 So. 2d 1122 (Fla. 1st DCA 2001). *See also, Sure Snap Corp. v. Baena*, 705 So. 2d 46, (Fla. 3d DCA 1997).

An attorney's liability for professional negligence is limited to clients with whom the attorney shares privity of contract. *Espinosa v. Sparber, Shevin, Shapo, Rosen and Heilbronner*, 612 So. 2d 1378 (Fla. 1993); *Horowitz v. Laske,* 855 So 2d 169 (Fla 2003).   While taking all of the Plaintiff's allegations in the Complaint as true, it is undisputed that the defendant, Lusan Llabona, was retained by the Plaintiff's ex-wife – not by the Plaintiff himself.   Additionally, the Plaintiff's Complaint is completely devoid of any evidence tending to indicate that the Plaintiff was an intended or apparent third party beneficiary to Ms. Llabona and the ex-wife's agreement. It is obvious that there exists no privity between the Defendants and the Plaintiff.   Assuming, arguendo, that the Plaintiff's claim for legal malpractice is appropriately pled, the Plaintiff claim is barred by the two (2) year statute of limitations as the act complained of occurred more than two (2) years ago. *Fla. Stat.* §95.11.   For this simple reason, Count I of the Plaintiff's Complaint should be dismissed for failure to properly plead a cause of action for Legal Malpractice.

iv.   <u>The Florida Bar Rules do not confer a private cause of action.</u>

Finally, Plaintiff has also made several references Ms. Llabona's alleged violations of the Rules Regulating the Florida Bar.   To the extent that the Plaintiff is attempting to assert a claim for negligence upon a violation of the Florida Rules of Professional Conduct, this claim should be dismissed. In Florida, it is well settled that the Florida Rules of Professional conduct

"preclude a private cause of action arising from a violation of the rules." *Smith v. Bateman Graham*, 680 So.2d 497, 498 (Fla.1st DCA 1996) citing *Tew v. Arky, Freed, Stearns, et al.*, 655 F.Supp. 1571 (S.D. Fla. 1987) (violation of a disciplinary rule did not create a private cause of action).

The preamble of Chapter 4, Rules Regulating The Florida Bar, provides:

> **Violation of a rule should not give rise to a cause of action nor should it create any presumption that a legal duty has been breached**. The rules are designed to provide guidance to lawyers and to provide a structure for regulating conduct through disciplinary agencies. **They are not designed to be a basis for civil liability.** (Emphasis supplied)

Moreover, "nothing in the rules should be deemed to augment any substantial legal duty of lawyers or the extra-disciplinary consequences of violating such duty." *Id.*; see also *Smith*, 680 So.2d at 498. For the foregoing reasons, the Plaintiff's attempt to establish a private cause of action under the Rules Regulating the Florida Bar should be dismissed.

v.    The Plaintiff has failed to plead a cause of action under Florida Statute §772.103 and §772.104 – The Civil Remedies for Criminal Practices Act

The Plaintiff has attempted to bring count III of his First Amended Complaint under Florida Statutes §772.103 and §772.104 – Florida's Civil Remedies for Criminal Practices Act. The Plaintiff's request for relief in count III fails to state a claim upon which relief can be granted. Florida Statute §772.103 provides:

> It is unlawful for any person:
> (1) Who has with criminal intent received any proceeds derived, directly or indirectly, from a pattern of criminal activity or through the collection of an unlawful debt to use or invest, whether directly or indirectly, any part of such proceeds, or the proceeds derived from the investment or use thereof, in the acquisition of any title to, or any right, interest, or equity in, real property or in the establishment or operation of any enterprise.
> (2) Through a pattern of criminal activity or through the collection of an unlawful debt, to acquire or maintain, directly or indirectly, any interest in or control of any exercise or real property.

(3) Employed by , or associated with, any enterprise to conduct or participate, directly or indirectly, in such enterprise through a pattern of criminal activity or the collection of an unlawful debt.
(4) To conspire or endeavor to violate any of the provisions of subsection (1), subsection (2), or subsection (3).

*Fla. Stat.* §772.103.

In this case, the Plaintiff attempts to persuade this Court that Attorney Llabona's alleged conduct during the Plaintiff's child support dispute somehow fits within the very narrow confines of §§772.103 and 772.104. District Courts have discussed the Civil Remedies for Criminal Practices Act, including what types of lawsuits may be brought under the statute. *Allstate Ins. Co. v. Palterovich*, 653 F. Supp. 2d 1306, 1324 (S.D. Fla. 2009) (explaining purpose of Florida's Civil Remedies for Criminal Practices statute 772.104 and 772.103). The Civil Remedies for Criminal Practices Act has been dubbed the "Florida RICO Act" because it patterns the Federal Rico Act. *Id.* at 1325. The District Courts have consistently applied the analysis of federal RICO claims to states cases involving Florida's RICO act. *Jackson v. Bellsouth Telecomms.*, 372 F.3d 1250, 1264 (11th Cir. 2004).

"The four elements of civil RICO liability are (1) conduct, (2) of an enterprise, (3) through a pattern, (4) of racketeering activity." *Langford v. Rite Aid of Ala., Inc.*, 231 F.3d 1308, 1311 (11th Cir.2000). "Plaintiffs in such an action must identify and prove a pattern of racketeering activity, defined as two 'predicate acts' of racketeering activity within a 10-year period." *Id.* at 1311-12 (citing 18 U.S.C. § 1961(5)). "The phrase 'racketeering activity' is defined as any act which is indictable under a lengthy list of criminal offenses," including any act or threat involving murder, kidnaping, gambling, arson, robbery, extortion, bribery, mail fraud, wire fraud, counterfeiting, etc. *Id.* at 1312; *see also* 18 U.S.C. § 1961(1). See also *Rogers v. Nacchio*, 241 Fed. Appx. 602, 607 (11th Cir 2007). "In order to survive a motion to dismiss, a

plaintiff must allege facts sufficient to support each of the statutory elements for at least two of the pleaded predicate acts." *Republic of Panama v. BCCI Holdings (Luxembourg) S.A.*, 119 F.3d 935, 949 (11th Cir. 1997); *Rogers v. Nacchio*, 241 Fed. Appx. at 607.

Facts of a typical racketeering case are illlustrated by *Allstate* noted above.  In *Allstate*, it was alleged that twenty-two (22) defendants engaged in a conspiracy to defraud insurance companies by staging automobile accidents over a period of 4 years and operating sham medical clinics that submitted false claims to various insurance companies.  653 F. Supp. 2d at 1314. The court found that the defendants were liable under both the Federal RICO and Florida's RICO statutes for conspiring to establish an enterprise that unlawfully collected money in an effort to fund an underground insurance fraud ring.  *Id.* at 1335.

In the case before this Court, the Plaintiff alleges that Attorney Llabona committed numerous "felonies" when she submitted her pleadings to Judge Sprinkel. (Doc. 3, ¶ 17). Specifically, the Plaintiff argues that Attorney Llabona was somehow manufacturing evidence. (Doc. 3, ¶ 17).  With that said, the Plaintiff never alleges that the alleged felonies are considered "racketeering activity," as required by *Langsford*.  For that reason alone, the Plaintiff has failed to state a claim under Florida's RICO statute

Even if this Court believes that Attorney Llabona's alleged actions during the child support hearing before Judge Sprinkel qualifies as a "pattern of criminal (or racketeering) activity," the Plaintiff's count III still fails to establish that Attorney Llabona's activity was in furtherance of "acquisition of any title to, or any right, interest, or equity in, real property or in the establishment or operation of any enterprise."  *Fla. Stat.* §772.103.  Additionally, for this reason, the Plaintiff's count III should also be dismissed for failure to state a claim.

Additionally, the Plaintiff has failed to allege that the Plaintiff was some sort of "enterprise." "[B]y the definition: an enterprise includes any union or group of individuals associated in fact. On its face, the definition appears to include both legitimate and illegitimate enterprises within its scope; it no more excludes criminal enterprises than it does legitimate ones." *Palm Beach County Envtl. Coalition v. Florida*, 651 F. Supp. 2d 1328, 1349 (S.D. Fla. 2009) (citing *U.S. v. Turkette,* 452 U.S. 576, 580, 101 S.Ct. 2524, 2527, 69 L. Ed. 2d 246 (1981)). Further, "The 'enterprise' is not the 'pattern of racketeering activity;' it is an entity separate and apart from the pattern of activity in which it engages. The existence of an enterprise at all times remains a separate element which must be proved . . . ." *Id.,* 452 U.S. at 583, 101 S.Ct. at 2529.

The Plaintiff has only alleged that Attorney Llabona represented his ex-wife during a child support dispute. The Plaintiff has failed to allege that Attorney Llabona is connected or belongs to an "enterprise." For this, and the reasons stated above, the Plaintiff's count III should be dismissed with prejudice.

### C.   Conclusion

It is clear that the Plaintiff is bringing a claim against his ex-wife's attorney in response to disputes that arose as a consequence of the divorce and subsequent child support hearings. During those the child support hearings, the Plaintiff has sentenced to serve jail time. The Plaintiff, feeling that Judge Sprinkel wrongly sentenced him to jail, now sues his wife's lawyer for statements that had no bearing on the Judge's decision to hold him in contempt. It is unfortunate for Attorney Llabona that she is faced with defending herself in a lawsuit that is both frivolous and harassing. For the reasons summarized immediately below, the Plaintiff's First Amended Complaint should be dismissed with prejudice.

14

First and foremost, even if the First Amended Complaint truthfully alleged that Attorney Llabona committed wrongful conduct, her actions during the judicial proceedings are cloaked with litigation privilege. Additionally, Judge Sprinkel had the authority and was in the best position to sanction Ms. Llabona for her conduct during the judicial proceeding. Based on this well established privilege, the Plaintiff's First Amended Complaint should be dismissed.

Second, should this Court determine that Ms. Llabona's conduct is not protected by the privilege, the Plaintiff's counts I and II under the §1983 of the Civil Rights Act should be dismissed with prejudice because Attorney Llabona was not acting under "color of law" during the judicial proceedings. Furthermore, the Plaintiff's request for relief under the Florida Bar Rules is wrongful and should be dismissed as the Rules do not provide for a private cause of action.

Finally, the Plaintiff's count III under Florida's RICO statute should be dismissed with prejudice because the Plaintiff has not, and cannot, allege any facts sufficient to state a claim under §772.103 and §772.104.

If the Court should find that any portion of the Plaintiff's First Amended Complaint should survive this Motion to Dismiss, the Defendants also respectfully request that this Court strike the Plaintiff's request for punitive damages and his request for a specific monetary amount of damages as they are improper.

WHEREFORE, based upon the above and foregoing, the Defendants, LUSAN C. LLABONA, ESQUIRE, and LUSAN C. LLBONA, P.A., believe that the Plaintiff's First Amended Complaint should be dismissed in its entirety for the reasons set forth herein. In the alternative, the Defendants request that this Court strike the Plaintiff's request for punitive damages and request for a specific monetary amount of damages. Additionally, the Defendants

request that this Court award it fees and costs for the preparation of this Motion as well as any

other relief deemed just and proper.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of this document has been electronically filed with the Clerk of the Court using the CM/ECF e filing system on this 20th day of April 2010, to **Clark A. Huls,** Pro Se Plaintiff, 2862 Pine Avenue, Mims, FL  32754.

> **MARSHALL, DENNEHEY, WARNER,**
> **COLEMAN & GOGGIN**
> Attorneys for Defendants, Lusan C. Llabona, Esq.
> and Lusan C. Llabona, P.A.
> 201 East Kennedy Blvd., Suite 1100
> Tampa, FL  33602
> Phone: (813)472-7800
> Fax:    (813)472-7811
>
> By:    /s/ Phillip J. Harris
>        **MARJORIE S. HENSEL, ESQ.**
>        Florida Bar No. 771820
>        **PHILLIP J. HARRIS, ESQ.**
>        Florida Bar No. 0044107