# UNITED STATES DISTRICT COURT
### FOR THE
## MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

CLARK A. HULS,

          Plaintiff,

v.

LUSAN C. LLABONA,

LUSAN C. LLABONA, P.A.,

          Defendants.

Case No. 6:10-cv-00538-31GJK

---

## PLAINTIFF'S RESPONSE IN OPPOSITION TO MOTIONS (DOCS 10 AND 14 )

---

COME NOW the Plaintiff, CLARK A. HULS, *pro se*, to file his response to Defendants' Motion to Dismiss The Plaintiff's First Amended Complaint And Motion To Strike And Memorandum Of Law In Support ("Motions") (Doc 10) and Motion for Sanctions (Doc 14) and in support thereof states as follows:

    1.    The Court has continuing jurisdiction over the parties and the subject matter in the above styled cause of action.

    2.    The Plaintiff filed the original pleading in this case on March 9th, 2010. The Plaintiff filed his First Amended Verified Complaint ("Complaint")(Doc 3) on the 26th of March 2010 and immediately sent a copy to Marjorie Hensel, who had submitted a Notice Appearance of Counsel on March 22nd, 2010. On or about the 15th of April 2010 Ms. Hensel removed the Complaint to this Court. On behalf of the Defendants, Mr. Phillip Harris, ("Counsel"), filed the aforementioned Motions (Doc 10) on April 20th, 2010.





3.      The Plaintiff made an error in his First Amended Verified Complaint in referencing the endnotes. In Doc. 3 ¶46, the Plaintiff stated, "listed in endnote six, seven, and thirteen." The correct reference should have been for endnotes five, six, and fourteen, respectively. The Plaintiff regrets making this error and apologizes to the Court and the Defendants for this error.

## I.      BACKGROUND

4.      Family law cases in Florida move very rapidly[1] because of the large number of people that have to use the Judicial system. The Florida Supreme Court has simplified the family law forms because of the large number of *pro se* parties involved. This custom has resulted in Judges relying on attorneys for the facts of a case. If a person is without an attorney, even though he or she is sworn in, the judge will oftentimes believe the "officer of the Court" above an unrepresented party. Family law attorneys also have the "shorthand" down for communicating to Judges what they need, so more people can be accommodated in a shorter amount of time.

5.      This lawsuit stems from the activity of November 16th, 2005, when Attorney Llabona began to represent the Plaintiff's former wife in a child support contempt hearing. To initiate this hearing Attorney Llabona filed the Motion for Contempt and Enforcement, ("2005 Motion") (Doc 15-1b), which she had created that

---

[1] The Plaintiff's domestic case involved two contemptible issues; a breech of contract claim for over $17,000 in damages; and a Marital Settlement Agreement (Doc 15-7b and 15-8) ("MSA") enforcement claim about life insurance for the Plaintiff.   The amount of time scheduled for this hearing was only 30 minutes, as documented in the Notice of Hearing (Doc 15-2b).   From the time the Plaintiff was served until this hearing, there were only 24 business days over a time period that included 3 federal holidays.

The Plaintiff had have the bank records of his former wife to prove his innocence because of cashier's checks that he had paid with. These records took over four months to get, which would have been impossible to accomplish in the 24 business days prior to the January 18th, 2006, hearing.

very same day.   The 2005 Motion only had Attorney Llabona's signature as the complaining witness.   With the 2005 Motion Attorney Llabona filed a Request to Produce and a Notice of Hearing (Doc 15-2b).

6.    In the 2005 Motion Attorney Llabona had four complaints against the Plaintiff, of which only three had the 2005 Motion as evidence.  It was in the 2005 Motion where Attorney Llabona falsified the Plaintiff's responsibility to **provide**[2] health insurance for the parties' minor children. This was required by Judge Sprinkel at a prior hearing on the 29th of October 2003 nunc pro tunc to October 14th, 2003.   The requirement to provide health insurance for the minor children was made of the former wife, and not the Plaintiff.  Although Court Ordered to provide health insurance for the minor children, the former wife never obtained it during those 27 months.

7.    Providing health insurance for the children was never a requirement of the Plaintiff from the time of his divorce in October 2002 through the hearing in January 2006. He did, however, have the obligation to pay for all health benefits of the minor children, which he did pay,[3] and to reimburse the former wife for the children's health insurance when she obtained it.  Attorney Llabona conspired with the Plaintiff's former wife and falsified the 2005 Motion to give the appearance that the Plaintiff had failed to provide the children's health insurance.  After seeing the fraudulent declarations in the 2005 Motion showing the Plaintiff did not obtain the

---

[2] Counsel incorrectly stated, "According to the Plaintiff's Complaint, Ms. Llabona, on her client's behalf, filed a Motion for Contempt against the Plaintiff due to the fact that he had not complied with the court's child support order.  Specifically, Ms. Llabona alleged that the Plaintiff failed to **keep** and **pay** for the minor children's health insurance." (Doc 10, ¶3)

A person cannot **keep and pay** for something that does not exist.

[3] On March 4th, 2010, Judge Thorpe found the Plaintiff had **overpaid** his former wife for all MSA obligations including child support, children's medical expenses, *inter alia,* from the Final Judgment of Divorce on October 30th, 2002, through the time he was incarcerated on January 18th, 2006.

health insurance that Judge Sprinkel himself had ordered 27 months earlier, Judge Sprinkel was prejudiced against the Plaintiff and would not give the Plaintiff the opportunity to defend himself, and sentenced the Plaintiff to 180 days in jail on the 18th of January 2006 in a hearing that lasted thirty minutes.

8.      The Plaintiff was released from jail on the 13th of February 2006, after his family hired an attorney, with a 60 day suspended sentence to allow him to obtain the evidence of his innocence.   After struggling four years to do this, on the 4th of March 2010 the Plaintiff was finally released from the sentence and from the requirements of the fraudulent Order of the 2nd of February 2006 (Doc 15-2c) that was entered as a result of the January 2006 hearing.    The Plaintiff filed this action in the 9th Circuit Court of Florida five days later against Lusan C. Llabona and Lusan C. Llabona P.A.[4]. This case was then removed to the Middle District Court by the Defendants on April 15th, 2010.

## II.    EVIDENCE SUPPORTING ATTORNEY LLABONA'S ACTS

9.      Attorney Llabona is an experienced attorney who obtained her undergraduate degree in English from Florida International University and her Juris Doctorate degree from Notre Dame Law School[5].   Her experience both as an attorney and English major, equipped her with a high level of skill in dissecting the English language and as a result was able to insert the necessary words into the 2005 Motion and intentionally undertake these tortuous acts against the Plaintiff.

---

[4] This action is against the corporate entity because of Florida Statutes; §621.02-"Professional Service Corporation and Limited Liability Company Act"; and §621.07-"The corporation or limited liability company shall be liable up to the full value of its property for any negligent or wrongful acts or misconduct committed by any of its officers, agents, members, managers, or employees while they are engaged on behalf of the corporation or limited liability company in the rendering of professional services."

[5] From Attorney Llabona's website http://llabona.law.officelive.com/Attorneys.aspx

10.     "The signature of an attorney shall constitute a certificate by the attorney that the attorney has read the pleading or other paper; that to the best of the attorney's knowledge, information, and belief there is good ground to support it . . .."[6] Because the 2005 Motion was citing self-authenticating documents,[7] Attorney Llabona cannot assign blame of the deceptions in her 2005 Motion to another person.   Attorney Llabona certified with her signature that she had read the 2005 Motion and knew it was correct.

11.     On November 16th, 2005, when Attorney Llabona created the 2005 Motion (Doc 15-1b), no person had more knowledge of the contents of the Plaintiff's MSA (Doc 15-7b and Doc 15-8) and prior 2003 Court Order (Doc 15-1c) than Attorney Llabona. Attorney Llabona's 2005 Motion either quoted directly or indirectly[8] over 60 words from the two documents in the correct sequence with the correct punctuation and capitalization. The MSA (Doc 15-8), the 2003 Order (Doc 15-1c), and the 2005 Motion (Doc 15-1b) are excerpted on the next two pages to show the fraudulent statements.  In the two documents quoted from that are excerpted below, all references to the Plaintiff's requirements to provide health insurance or healthcare for the parties' minor children are included.

12.     Attorney Llabona's falsified 2005 Motion (Doc. # ) is on the left hand side of the following pages and the documents she quoted from are the right side of the following pages.   The words that Attorney Llabona quoted exactly are *italicized* and *underlined*. The words that she replaced are **emboldened**.

---

[6] Fla. R. Jud. Admin. 2.515 (2010).
[7] Fed. R. Evid. 902(4) (2009) and Fla.Stats. §§90.955 & 90.902 (2009).
[8] Without quotation marks and more than 10 sequential words.

(Doc 15-1b, §6), "2005 Motion"
Attorney Llabona's falsified
MOTION FOR CONTEMPT AND
ENFORCEMENT
Filed November 29th, 2005

6.   HEALTH BENEFITS FOR CHILDREN. Pursuant to Paragraph 18 (f) of the Marital Settlement Agreement and Final Judgment, the Former Husband was to *provide medical, dental, orthodontic, and optical benefits for the minor children until they each turn 18 years of age.*
    In violation of the Final Judgment and Marital Settlement Agreement, the Former Husband has failed to provide any health benefits or health insurance for the minor children.   [continued below]

---

(Doc 15-8, §18 ¶(f)) "MSA"
Plaintiff's
MARITAL SETTLEMENT
AGREEMENT & FINAL JUDGMENT
OF DISSOLUTION
OF MARRIAGE
of October 30th, 2002

(f) The Husband, CLARK A. HULS, shall *provide medical, dental, orthodontic, and optical benefits for the minor children until they each turn 18 years of age.*
    The Husband shall pay all costs associated with medical costs and prescriptions for the minor children.

[End of Document]

---

13.   The following is nine false statements from Attorney Llabona's 2005 Motion, (above left), that are either directly false or they insinuate a failure of the Plaintiff to fulfill his duty.

13.(a)   Pursuant to Paragraph 18 (f) of the [MSA] . . . the Former Husband was to provide medical, . . . [indicative of a failure of duty]

13.(b)   In violation of the Final Judgment and Marital Settlement Agreement, the Former Husband has failed to provide any health benefits . . . for the minor children.[9]

13.(c)   In violation of the Final Judgment and Marital Settlement Agreement, the Former Husband has failed to provide any . . . health insurance for the minor children.

---

[9] The Plaintiff does not know if Attorney Llabona actually knew if this particular statement was true or not when she wrote it.

[Doc 15-1b, §6, continued from above]

When the Former Wife brought this to the Court's attention at a previous hearing, the Court entered an Order on Verified Motion to Compel and for Sanctions, on October 29, 2003.  Pursuant to Paragraph 5 of that Order, *the Former* **Husband was ordered** *to* ". . . *immediately obtain health insurance for the minor children of the parties.  The Former Husband will be fully responsible for the cost[s] and expenses associated with the purchase and upkeep of this insurance as an additional form of child support*."

In violation of that Order, the Former Husband failed to provide any insurance coverage.  As a result, the Former Wife has had to incur medical, prescription, and other health related expenses for the minor children.   An itemization of said expenses, along with the corresponding invoices, bills, and/or receipt or other proof of payment is attached hereto as Composite Exhibit "A".  The Former Husband should be ordered to pay said expenses as well as to provide health insurance coverage, as previously ordered by this Court.       [End of Document]

---

(Doc 15-1c, §5)
**ORDER ON VERIFIED MOTION TO COMPEL AND FOR SANCTIONS,**
October 29th, 2003

5.          *The Former* **Wife is** *to immediately obtain health insurance for the minor children of the parties. The Former Husband will be fully responsible for the costs and expenses associated with the purchase and upkeep of this insurance as an additional form of child support.*

The Former Wife will immediately forward the bill for this insurance to the Former Husband, who will promptly pay this obligation immediately upon its receipt.

[End of Document]

---

13.(d)   When the Former Wife brought this to the Court's attention at a previous hearing, . . .

13.(e)   Pursuant to Paragraph 5 of that Order, the Former **Husband was ordered** to ". . . immediately obtain health insurance for the minor children [. . .]."

13.(f)   In violation of that Order, . . .

13.(g)   . . . the Former Husband failed to provide any insurance coverage.

13.(h)   As a result, the Former Wife has had to incur medical, prescription, and other health related expenses for the minor children.

13.(i)   The Former Husband should be ordered to pay said expenses, . . . as previously ordered by this Court.

14. Attorney Llabona caused the Plaintiff to be deprived of his constitutional rights by intentionally prejudicing Judge Sprinkel who was hearing the Plaintiff's domestic case. She did this by; (1) conspiring with the Plaintiff's former wife who could exercise jurisdiction over the Plaintiff; and (2) intentionally falsifying the 2005 Motion (Doc 15-1b).

15. Attorney Llabona was intent on this course of action and did not accidentally mislead Judge Sprinkel. The mathematical chance of Attorney Llabona correctly writing over 60 words in the correct order with the correct punctuation and capitalization from two different Court Orders without having those documents would make it an impossibility.[10]

16. Regarding the 2005 Motion, Attorney Llabona knew if she were to represent the paragraph about the children's health insurance correctly it would show the Plaintiff's former wife at fault and in contempt. While it would have been easier to leave out that section of the 2005 Motion, by inserting the misleading paragraph she received the following benefits: (1) The Plaintiff's former wife comes to court with "clean hands". (2) The Judge will believe what is before him in writing over verbal denials from the Plaintiff. (3) It gives the appearance to the Judge that the Plaintiff was defiantly violating his Court Order.

---

[10] In comparing what Attorney Llabona did to the Florida Lottery it is easy to see the impossibility of guessing at the words. There are two sets of letters in the English alphabet consisting of 26 letters each (capital and lowercase). After adding them to a space, comma, period, and quotation marks, a person would have 56 items to choose from.

Comparing that to the Florida Lottery that has 53 numbers to choose from and the only requirement to win is to choose 6 (without being in a specific order) of the 53 numbers. According to the Florida Lottery's website, (http://www.flalottery.com/inet/lottoMain.do), the odds for doing that is slightly under 23,000,000:1. With that being as difficult as it is, it would be impossible to randomly choose from the 56 characters and put them in the correct sequence of the 376 characters that Attorney Llabona correctly wrote.

III.    CLAIM OF LITIGATION PRIVILEGE OR IMMUNITY (Doc 10 and Doc 14)

17.    All of Counsel's cases referring to litigation immunity in both Documents 10 and 14, including his citations[11] regarding attorneys' immunity under USC 42 §1983, refer to tortious acts that are distinguishable from the criminal acts Attorney Llabona committed.

18.    The Defendants' Counsel stated that Attorney Llabona enjoyed total litigation immunity for everything she said in Court including in her motions.    His first quote in this subsection was, "[A]bsolute immunity must be afforded to any act occurring during the course of a judicial proceeding, regardless of whether the act involves a *defamatory* statement or...other *tortious behavior*...so long as the act has some relation to the proceeding."

19.    Counsel is correct in citing these cases concerning "defamatory statements" and other "tortious behavior" in court proceedings.    However, these cases are inapposite to the case at hand because Attorney Llabona committed felonies which are more severe than mere defamation or torts.    Nowhere in the Plaintiff's complaint has he accused Attorney Llabona of any tortious acts as a result of what she *said* in court[12].

---

[11] In his Motions on page 9, ¶1, Counsel stated that, "*Brown v. Ferrer-Roo*, 2009 U.S. Dist. LEXIS 84276 (S.D. Fla. Sept. 15, 2009) (holding that a §1983 claim is not cognizable against an attorney as they are not acting under color of law)".    In the cited case the Federal Magistrate recommended dismissal because the Plaintiff had no Federal claim and at best a state malpractice action.

The majority of citations in Counsel's Motions are either inapplicable to the case at hand or have quotes selectively culled to support the argument wanted.    An example of this is on page 9, 1st ¶ of Counsel's Motions where he cites the M.D. of Florida quoting from the Supreme Court saying that violators of USC 42 §1983 were defined as acting with power from "employment with the state", yet the very case he was quoting from the Supreme Court found a non-employee liable for §1983 damage.

Counsel is also selectively culling statutes for the same reason, specifically Fla.Stat. §772.103.

[12] This is because there was no reporter on January 18th, 2006 to record the proceedings.    Plaintiff was unaware the parties had to make arrangements prior to the hearing and he does not know why Attorney Llabona did not provide for one either.

20.    If a Plaintiff asserts a violation of a constitutional right, as in this case, the party who asserts an absolute immunity defense claim, has to "bear the burden of showing that public policy requires an exemption of that scope."[13] The Supreme Court also held that the determining factor regarding level of immunity a person has, is by "the nature of the function performed, not the identity of the actor who performed it."[14]

21.    The Supreme Court stated that, "As the qualified immunity defense has evolved, it provides ample protection to all but the plainly incompetent or those who **knowingly violate the law.** At common law, in cases where probable cause to arrest was lacking, a complaining witness' immunity turned on the issue of malice, which was a jury question," *Malley v. Briggs,* 475 US 335 (1986) at 341, (emphasis added).

22.    While *Malley* was about a police officer who was the complaining witness, in *Kalina* the Supreme Court ruled **unanimously** that a deputy prosecuting attorney was only allowed "qualified immunity" when serving in the role of complaining witness of a criminal offense.[15]

## IV.    FL. STATUTES PROVIDE FOR CIVIL LIABILITY FOR COURTROOM CRIMES

23.    By statute, any person can be civilly liable for crimes committed exclusively in the courtroom during official proceedings under chapter 772 of the Florida Statutes (2009). For example one of the predicate crimes to collect civilly under §772.103 is §772.102(1)(a)27. This relates to Perjury under §837.02 and §837.021:

[13] *Butz v. Economou,* 438 U.S. 478 (1978) at 506.
[14] *Kalina v. Fletcher,* 522 US 118 (1997)
[15] "In *Malley* we considered, and rejected, two theories on which immunity might have been accorded to a police officer who had caused an unconstitutional arrest by presenting a judge with a complaint and supporting affidavit that failed to establish probable cause. **His first argument, that his function was comparable to that of a complaining witness, actually militated against his claim because such witnesses were subject to suit at common law."** *Kalina supra* at 127

23.(a)   (1) Except as provided in subsection (2), whoever makes a false statement, which he or she does not believe to be true, under oath in an official proceeding in regard to any material matter, commits a felony of the third degree, punishable as provided in s. 775.082, s. 775.083, or s. 775.084.

23.(b)   (2) Whoever makes a false statement, which he or she does not believe to be true, under oath in an official proceeding that relates to the prosecution of a capital felony, commits a felony of the second degree, punishable as provided in s. 775.082, s. 775.083, or s. 775.084.

23.(c)   (3) Knowledge of the materiality of the statement is not an element of the crime of perjury under subsection (1) or subsection (2), and the defendant's mistaken belief that the statement was not material is not a defense.

24.   Chapter 837 also clearly defines an "official proceeding", therefore disallowing absolute litigation immunity for this crime. In Florida Statute §837.011;

24.(a)   (1) "Official proceeding" means a proceeding heard, or which may be or is required to be heard, before any legislative, judicial, administrative, or other governmental agency or official authorized to take evidence under oath, including any referee, general or special magistrate, administrative law judge, hearing officer, hearing examiner, commissioner, notary, or other person taking testimony or a deposition in connection with any such proceeding.

25.   Other Florida Statutes that allows for civil damages as a result of criminal conduct in judicial hearings are §843.0855(3) and 837.06, which are two of the offenses Attorney Llabona violated. These statutes indicate that the legislative and executive branches of Florida did not intend to grant common law absolute litigation immunity to criminal actors.[16]

## V.   INTENTIONAL PROFESSIONAL MISCONDUCT AND MALPRACTICE

26.   Counsel stated that the Plaintiff and Defendants were not in privity of contract even as a third party beneficiary. The Plaintiff agrees with Counsel as to this fact.

---

[16] Another example is that the Legislative, Judicial, and Executive branches have also allowed for attorneys to be liable to non-clients for violations of certain non-felonious statutes. In *Heintz v. Jenkins*, 514 US 291 (1995), the Supreme Court decided the "term 'debt collector' in the Fair Debt Collection Practices Act . . . applies to attorneys who 'regularly' engage in consumer-debt-collection activity, even when that activity consists of litigation" and would be civilly liable.

While Attorney Llabona was not in privity of contract with the Plaintiff, the duty she owed to the Plaintiff is to not commit "intentional" crimes or criminally fraudulent acts against him which would cause the deprivation of his liberty and property. Attorney Llabona's duty is higher than any other type of professional who intentionally committed similar acts against non-clients in their role as a professional. This higher duty of being an "officer of the court" subscribes more responsibility, not less, than a non-attorney to uphold the judicial system and not deprave it through criminal acts and to obtain and enforce a fraudulent Order with the police powers of the state. [17]

27.  Had another attorney or non-attorney intentionally accomplished similar illicit acts as a complaining witness, they too would be civilly liable under both state and federal laws. If this case were only about simple negligence, libel, or slander, Counsel would be correct about Attorney Llabona's immunity.

28.  Additionally as an "officer of the court," Attorney Llabona does owe a duty to the Court to not falsify evidence and to be truthful concerning the law, otherwise she will have committed a "fraud upon the court". Attorney Llabona's refusal to apprise the Court of the truth in the case before it at the hearing in January 2006, means she failed in this duty to the court. Because Attorney Llabona intentionally created the evidence regarding the court's prior orders concerning the Plaintiff she again failed in her duty to the court. The Florida Supreme Court's opinion of an attorney's duty as an officer of the court is described here:

---

[17] Counsel states, "According to Florida law, the elements of a cause of action based upon an attorney's **negligent handling of a client's** case . . . ." The rules and case law Counsel then cites are irrelevant since Attorney Llabona and the Plaintiff were not in privity of contract and the Plaintiff is not accusing Attorney Llabona of being negligent.

28.(a)   The primary function of trial court proceedings is to find the truth, i.e., the true facts, in disputes between man and his neighbor and man and his government, in order that the applicable law may be applied thereto so as to reach a just conclusion. In our system the courts are almost wholly dependent on members of the bar to marshal and present the true facts of each cause in such manner as to enable the judge or jury to cook the adversary contentions in a crucible and draw off the material, decisive facts to which the law may be applied.

28.(b)   When an attorney adds or allows false testimony to be cast into the crucible from which the truth is to be refined and taken to be weighed on the scales of justice, he makes impure the product and makes it impossible for the scales to balance.

28.(c)   No breach of professional ethics, or of the law, is more harmful to the administration of justice or more *hurtful to the public appraisal of the legal profession than the knowledgeable use by an attorney of false testimony in the judicial process. When it is done it deserves the harshest penalty.*

*Dodd v. The Florida Bar* So. 2d 17 (Fla. 1960) (emphasis added).

29.   Attorney Llabona not only had knowledge "of false testimony in the judicial process", *id.*, but it was she who made the intentionally deceptive statements to the Judge in writing, who in turn relied on those statements causing damage to the Judicial System and the Plaintiff and "deserving the harshest penalty".

30.   In his Motions, Counsel stated that Attorney Llabona was not responsible for influencing the Judge to make the decision he did when Counsel stated that:

30.(a)   Judge George Sprinkel made the final determination that the Plaintiff was in violation of his prior order regarding the non-payment of child support. Even if Attorney Llabona was incorrect in arguing that it was the Plaintiff's responsibility to secure health insurance for his minor children, Judge Sprinkel, who issued the health insurance order in the first place, was in the position to know the requirements of his final order and make the determination as to whether the Plaintiff was subject to discipline for that infraction.

Doc. 10, page 4, 2nd ¶.

31.   According to the Florida Supreme Court, *Dodd supra*, Judge Sprinkel had every right to rely on an Officer of the Court's 2005 Motion to be truthful especially where it purports to quote directly from Judge Sprinkel's prior Court Order from 27

months before.  To believe that a judge would remember or compare an Order from over two years before, to a motion that has been prepared by an experienced attorney, whom he knows, and verify that the motion is accurately quoting the Order is naiveté.

## VI.    FLORIDA'S ROLE IN THE PLAINTIFF'S 14TH AMENDMENT VIOLATIONS

32.    The state of Florida has a responsibility for the Plaintiff's constitutional damages because of not putting in place protections against persons similar to Attorney Llabona, who would exploit the lenient requirements of Florida by committing felonies to have a person incarcerated.  The state of Florida's laws and customs of allowing and encouraging child support collection by civil contempt proceedings contributed to the Plaintiff's subsequent incarceration of January 18th, 2006, by not having minimal procedural due process protections in place.

33.    The Supreme "Court repeatedly has recognized that civil commitment for any purpose constitutes a significant deprivation of liberty that requires due process protection." *Addington v. Texas*, 441 US 418 (1979) at 426.  For civil commitment the Court requires "proof more substantial than a mere preponderance of the evidence" (*id.* at 427) This higher level of proof is required for civil commitment even though "state power is not exercised in a punitive sense" (*id.* at 428).  A preponderance-of-the-evidence level of proof is inadequate in a civil commitment proceeding even though "a civil commitment proceeding can in no sense be equated to a criminal prosecution"(*id.* at 428).

34.    If a child support enforcement hearing is deemed not to be a criminal proceeding even though the incarceration is used to "persuade" the individual to conform to a state requirement, and it is not for his or her protection or mental health benefit as a civil commitment is, it would fall on the deprivation-of-liberty spectrum

between a civil commitment and a criminal incarceration.   That means in a child support civil contempt case, it is inadequate to incarcerate a person on a mere preponderance-of-the-evidence level of proof because the Supreme Court held that the level of proof required for a civil commitment hearing has to be at least equal to "the 'clear and convincing' standard which we hold is required to meet due process guarantees . . ." *id.* at 433.

35.   By not having strict policies in place, an erosion of procedural due process protections can begin.   Almost 80 years ago the Supreme Court recognized the need for diligence to make sure that does not happen. "Initial compliance with a regulation which is valid when adopted, however, does not preclude later protest if that regulation subsequently becomes confiscatory in its operation." *Abie State Bank v. Bryan*, 282 U.S. 765, 776 (1931)

36.   The following are some of the procedural due process protections that are deficient in Florida.  Florida currently has no provision or requirement to; (1) notify the other party, prior to the hearing, of the possibility of immediate incarceration; (2) notify the other party of the right not to incriminate oneself; (3) have the complaining witness swear to the charges; (4) have the complaining witness include a simple written verification of the charges;[18] (5) have the petitioner make a good faith effort to try and resolve the situation with an independent referee prior to instituting contempt proceedings; (6) prove to a clear-and-convincing level before an individual can be incarcerated; (7) separate the complaining witness and "prosecutor" into two separate persons; (8) notify either party that the hearing will not be reported or recorded unless

---

[18] This statement would satisfy that obligation, "Under penalties of perjury, I declare that I have read the foregoing [document] and that the facts stated in it are true" Fla.Stat. §92.525(2). Violation of this statute is a 3rd degree felony.

they make provisions for it; and (9) report or record the civil contempt proceeding masquerading as a quasi-criminal hearing which the Florida Supreme Court Chief Justice acknowledges has not been required of them, yet.[19]

37.    Understandably civil contempt enforcement proceedings are necessary for the collection of child support.  However, to limit abuses caused by private individuals who act as the complaining witness and prosecutor, certain minimum standards, (e.g., (1) reporting or recording of the hearings for access to an appealable record; (2) notification of potential immediate incarceration for the respondent; and (3) a requirement for the level of evidence to be clear and convincing or higher to incarcerate), must be required.

38.    The Supreme Court has held that it is not what name is given to a proceeding, but what actions take place therein.  *In re Gault*, 387 US 1 (1967) in juvenile "civil" cases where the juvenile could be detained for as long as a felony convict, the juvenile has the right to have the burden of the evidence be "beyond a reasonable doubt".

## VII.    NON-STATE EMPLOYEES WHO ARE ATTORNEYS THAT ACT UNDER EXISTING STATE LAW CAN STILL BE HELD LIABLE UNDER USC 42 §1983

39.    The Supreme Court has held that a person does not have to work for the state to be liable for a 42 §1983 claim when it stated, "Whether private persons, who

---

[19][T]he appellant complains that he did not know that the hearing would not be recorded or reported. He assumed that this was a criminal proceeding and that all such proceedings are recorded. A petition for an injunction against domestic violence, however, is a civil proceeding, and **as yet there is no requirement that such matters be transcribed at public expense**. Therefore, the party must arrange in advance for the reporting and transcription of the proceedings.

It is indeed unfortunate that parties frequently are unaware of this requirement until after the fact. With so much litigation being conducted pro se, it seems to me that in the notice for the final hearing on the injunction the parties should be alerted that if they want the hearing reported it is up to them to arrange for the services of a court reporter to transcribe the proceedings. Without a record, a party's ability to exercise their appellate rights is, in most cases, lost before the final judgment is ever entered. *Amend. to Fla. Family Law Rules of Proc.*, 810 So. 2d 1 - (Fla. 2000)

conspire with state officials to violate constitutional rights, have available the good faith immunity applicable to public officials", *Wyatt v. Cole*, 504 U.S. 158 (1992) at 169. Cole through his attorney Robbins was acting under a state law that was later determined to be invalid because of the lack of judicial discretion. The Supreme Court stated that, "we must remand, since there remains to be determined, at least, whether Cole and Robbins, in invoking the replevin statute, acted under color of state law within the meaning of *Lugar v. Edmondson Oil Co.*, 457 U. S. 922 (1982)." *Wyatt, id.* at 169.[20]

## VIII.   RICO PROVISIONS

40.   The Florida Supreme Court has stated that, "Given the similarity of the state and federal statutes, Florida courts have looked to the federal courts for guidance in construing RICO provisions."[21]   Because of the complexities of understanding the "RICO" cases, many Federal District Courts have enacted a RICO Case Statement requirement based on the Federal Judicial Center's Manual for Complex Litigation.[22] The participants currently known to the Plaintiff who were members of the "RICO enterprise" were Lusan C. Llabona, her closely held corporation, Lusan C. Llabona, P.A., and the Plaintiff's former wife.[23]   A unanimous Supreme Court has held, regarding a single shareholder, closely held corporation that;

---

[20] Contrary to Counsels claim at Doc. 10 page , , the Supreme Court states, "Private persons, jointly engaged with state officials in the prohibited action, are acting 'under color' of law for purposes of the statute.  To act 'under color' of law does not require that the accused be an officer of the State. It is enough that he is a willful participant in joint activity with the State or its agents, United States v. Price, 383 U. S. 787, 794 (1966)." Adickes v. SH Kress & Co., 398 US 144 (1970).

[21] Gross v. State, 765 So. 2d 39 - Fla. (2000) at 43

[22] In Florida's Southern District it is local Rule 12.1 http://www.flsd.uscourts.gov/viewer/ viewer.asp?file=/localrules/2010~SouthernDistrictofFloridaLocalRules.pdf.

[23] In order to have the scheme to take money from the Plaintiff work, Attorney Llabona had to have the participation of the Plaintiff's former wife, otherwise Attorney Llabona would have no jurisdiction over the Plaintiff. The Plaintiff's former wife had to have an attorney willing to commit multiple felonies for the scheme to work.  But for this collaboration, the Plaintiff would not have suffered the deprivation of his constitutional rights.

40.(a)  The corporate owner/employee, a natural person, is distinct from the corporation itself, a legally different entity with different rights and responsibilities due to its different legal status. And we can find nothing in the statute that requires more "separateness" than that.

40.(b)  Rather, we hold simply that the need for two distinct entities is satisfied; hence, the RICO provision before us applies when a corporate employee unlawfully conducts the affairs of the corporation of which he is the sole owner—whether he conducts those affairs within the scope, or beyond the scope, of corporate authority.

*Cedric Kushner Promotions, Ltd. v. King*, 533 US 158 (2001)

41.    The Plaintiff's injuries were not necessarily caused by each individual predicate acts of the enterprise.  Florida Statute §918.13(1)(b)(2005) states:

41.(a)  (1)No person, knowing that a criminal trial or proceeding or an investigation by a duly constituted prosecuting authority, law enforcement agency, grand jury or legislative committee of this state is pending or is about to be instituted, [because Attorney Llabona was about to institute a proceeding against the Plaintiff, she had this knowledge], shall:

. . . .

41.(b)  (b)Make, present, or use any record, document, or thing, knowing it to be false.[24]

42.    The following are each of the felonies Attorney Llabona committed in which the Plaintiff would have suffered little to no damage.  Each of these felonies is regarding the 2005 Motion (Doc 15-1b), in which Attorney Llabona;

42.(a)  *made* the falsified 2005 Motion;

42.(b)  *presented* the 2005 Motion to the Plaintiff's former wife;

42.(c)  *presented* the 2005 Motion to the process server;

42.(d)  *presented* the 2005 Motion to the Plaintiff by proxy;

42.(e)  *presented* the 2005 Motion to the Clerk of the Court;

42.(f)  *presented* the 2005 Motion to the Judge by proxy;

42.(g)  *used* the 2005 Motion to serve notice to the Plaintiff and compel him to Court; and

42.(h)  *used* the 2005 Motion to institute a simulated legal process against the Plaintiff, which is a separate felony under Fla.Stat. §843.0855(3)(2005).

---

[24]At first glance the difference between the words "make", "present", or "use" might be indistinguishable.  An analogy that would help distinguish these words is if you applied them to a gun.  The differences are obvious if a person were to make a gun, present a gun, or use a gun.

43.    Attorney Llabona could have stopped this scheme after any one of these felonies from November 16th, 2005, through January 18th, 2006, and the Plaintiff would have suffered no damage.  It was not until Attorney Llabona _used_ the 2005 Motion in Court as evidence that the Plaintiff sustained damage.[25]  More felonies were committed by Attorney Llabona than the Plaintiff is able to list at this time.

## IX.    DAMAGES

44.    Defendants removed the Plaintiff's complaint from state court to Federal Court, therefore damages, both punitive and actual, are in compliance with Fed.R.Civ.P. 9(g).  A State rule only applies in Federal Court if there is no Federal rule.  Had Counsel wanted to strike the damage listings he should have filed the motion to strike in state court to be argued under state law.

## X.    PROCEDURAL DEFICIENCIES

45.    Counsel's Motions has multiple procedural deficiencies;

45.(a)  Paragraphs are not numbered in Docs. 10 and 14 per Fed.R.Civ.P Rule 10(b) ;

45.(b)  Counsel listed other unknown defendants that the Plaintiff supposedly has claims against namely; Lusan C. Llbona, P.A.; Susan L. Llabona, LLC.; Attorney Llbona; and the LLC defendant;

45.(c)  Counsel did not cite prevailing legal authority in a substantial number of citations, which is a violation of The Rules Regulating the Florida Bar Rule 4-3.3 (a)(1) see commentary; and

45.(d)  The Plaintiff has previously stated to Counsel that their reliance on litigation immunity as a defense from this claim is inapposite because of the difference between a tort and a crime, sent to Counsel in a letter on April 6th, 2010.

---

[25] As an aggravating factor Attorney Llabona filed a motion to postpone a hearing that would allow the Plaintiff to be released from jail, and argued against his release from jail when the hearing did commence, knowing the entire time that the reason the Plaintiff was in jail was due to her felonious actions in conjunction with the Plaintiff's former wife.

## XI.    CONCLUSION

46.    Attorney Llabona did do the tortuous acts the Plaintiff states, as evidenced by the exhibits filed before the First Amended Verified Complaint (Doc 3) and referenced in the same document which would allow for the listing of punitive damages under Florida law.

47.    Per case law and Florida Statutes, Attorney Llabona does not have any sort of immunity for committing felonies with regards to litigation whether it is in the courtroom or outside of it.

WHEREFORE, the Plaintiff, CLARK A. HULS, prays this Court deny or strike Defendants' Motions (Doc 10) for the above reasons stated.   In the alternative the Plaintiff would ask this Court to Order the Plaintiff to file with it a RICO Case Statement within 20 days and Grant leave for the RICO Case Statement to be 60 pages or file an amended complaint, prior to Ordering any portion of Defendants' Motions.

I HEREBY CERTIFY that a true and correct copy of the forgoing has been given to the Clerk of the Court for filing and uploading to the CM/ECF system and furnished via email this 28th day of April 2010, to Marjorie Hensel, Esquire, whose email is mshensel@mdwcg.com.

_____

CLARK A. HULS, *pro se*
2862 Pine Avenue
Mims, FL 32754
Telephone: (407) 466-9018
Facsimile: (813) 944-4942
E-mail address: clarkhuls@gmail.com