# UNITED STATES DISTRICT COURT
### FOR THE
## MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

CLARK A. HULS,

     Plaintiff,

-v-

                Case No. 6:10-cv-00538-31GJK

LUSAN C. LLABONA, *Esquire,*
LUSAN C. LLABONA, P.A., and the
HONORABLE BELVIN PERRY, JR., *Chief
Judge of the 9th Judicial Circuit Court of
Florida, in his personal and official
capacity as administrative supervisor,*

       Defendants.

---

## PLAINTIFF'S SECOND AMENDED COMPLAINT

COMES NOW, the Plaintiff CLARK A. HULS, *pro se*, to bring this second amended complaint to the above-styled Court, for actions undertaken by LUSAN C. LLABONA, Esquire; LUSAN C. LLABONA, P.A.; and the HONORABLE BELVIN PERRY, JR, that entitles him to legal remedy. In support thereof, the Plaintiff states:

1. This Court has jurisdiction as the amount in dispute is over $75,000 and because there is a dispute over the U.S. Constitution and Federal laws. There is also a dispute about the unconstitutionality of specific state laws and customs. The pendent common law and state claims may be resolved at this Court's discretion under its supplemental jurisdiction.

2. The Plaintiff, CLARK A. HULS, is a natural person do‑‑‑‑‑‑‑ng in the territorial confines of Brevard County, Florida.

Exhibit "1"
June 17th, 2010
Bates # 1

3.      The Defendant, LUSAN C. LLABONA, Esquire, is a natural person and an attorney.  She is domiciled and living within the territorial jurisdiction of Orange County, Florida.  She is an owner, employee, president, and registered agent of the Defendant, LUSAN C. LLABONA, P.A., which is a professional corporation organized and existing under the Constitution and laws of the state of Florida, and has its current principal place of business at 1309 East Robinson Street, Orlando, Florida 32801, within the territorial jurisdiction of Orange County, Florida.

4.      The Defendant, the HONORABLE BELVIN PERRY, JR, was responsible for the administrative procedures of the 9th Circuit Court of Florida in Orange County pursuant to Article V Section 2.(d) of the Florida Constitution, when these events occurred.  He was also responsible for enforcing the rules of said court.

## HISTORY OF EVENTS REGARDING DEFENDANT LLABONA

5.      Defendant Llabona prosecuted a child-support enforcement case[1] against the Plaintiff on behalf of the Plaintiff's ex-wife in the 9th Circuit Court of Florida.  Defendant Llabona created a motion,[2] in which she misrepresented two prior court orders.[3] She created and signed this motion, which she then proffered as evidence and initiated contempt proceedings against the Plaintiff.

---

[1] The 9th Circuit Court case number for the Plaintiff's family law case is 2002-DR-01577-O

[2] DE #15-1 pp. 3-21, "Motion for Contempt and Enforcement", ("Exhibit A", "2005 Mo⸫ ⸫ ⸫ "iled November 29th, 2005.

[3] DE #15-1, pp. 23-25, "Order On Verified Motion To Compel And Fc ⸫ ⸫ ⸫ ", "Exhibit B"), ordered October 29th, 2003 *nunc pro tunc* to October 14 ⸫ ⸫ ⸫

DE #15-7 pp. 21-25 and DE #15-8 pp. 1-12, "The Final Judgment C ⸫ ⸫ ⸫ incorporating the "Marital Settlement Agreement" ("MSA", "Exhibit F") or ⸫ ⸫ ⸫ ⸫ 30[th], 2002.

*Exhibit "1"*
*June 16th, 2010*
*Bates # 2*

6.      In Defendant Llabona's 2005 Motion, she misrepresented the Plaintiff's and his ex-wife's respective duties toward their minor children.   This motion also falsely stated *inter alia* that the Plaintiff was in arrears on his child support payments.

7.      Defendant Llabona's 2005 Motion misled Judge Sprinkel to believe that the Plaintiff was ordered to obtain health insurance for the parties' children.   The Plaintiff's ex-wife was ordered by Judge Sprinkel, over two years earlier, to fulfill this obligation, which Defendant Llabona now attributed to the Plaintiff with her falsified 2005 Motion.

8.      Defendant Llabona falsely attributed this obligation to the Plaintiff to enable her client to have the appearance of "clean hands" and because it would give the appearance to Judge Sprinkel that the Plaintiff was defiantly disobeying his order.

9.      At the hearing on January 18th, 2006, Judge Sprinkel received tacit verification from Defendant Llabona regarding her falsified 2005 Motion. Judge Sprinkel, relying on an officer-of-the-court's prejudicial assertions, believed that the Plaintiff was not being truthful when he told the court he was not obligated to obtain health insurance for the parties' minor children.

10.     Because of the felonious influence of Defendant Llabona, Judge Sprinkel did not give the Plaintiff any credit in his denials of the allegations or a chance to exonerate himself from the prevarications made through the concerted actions of Defendant Llabona and her client, namely, that he w~~ ~~~ 'ld support and had failed to provide health insurance for his chilc

Exhibit "1"
June 16th, 2010
Bates # 3

11.    After considering Defendant Llabona's falsified 2005 Motion, the child support arrearage affidavit of the clerk of the court, and the uncross-examined statements of the Plaintiff's former wife, Judge Sprinkel immediately had the Plaintiff incarcerated and sentenced to 180 days in jail unless a purge in the amount of $25,547 was paid.

12.    In his sentencing, Judge Sprinkel included the provision that if the Plaintiff did not pay the purge amount within 30 days, he would be placed into work release for the remaining 150 days. A civil judgment for $17,641 was also entered, which totaled $43,188 that Judge Sprinkel ordered the Plaintiff to pay his former wife. A revenue deduction Order was entered as well, which removed $1,500 per month from the Plaintiff's gross revenue for ongoing child support.

13.    After the Plaintiff was incarcerated, his family attempted to secure his release from jail by retaining an attorney who filed a Motion for Reconsideration on the 2nd of February 2006. The Plaintiff waited in jail 11 more days until this motion could be heard.

14.    On February 10th, 2006, Defendant Llabona moved to continue the February 13th hearing on the Motion for Reconsideration, notwithstanding that she had caused the Plaintiff to be incarcerated.

15.    Judge Sprinkel denied Defendant Llabona's continuance and the hearing for the Motion for Reconsideration took place as sch~~~ of February 2006 with Defendant Llabona opposing the Plaintiff

Exhibit "1"
June 16th, 2010
Bates # 4

of the hearing, the Orange County Jail failed to bring the Plaintiff to the court.  At this hearing, Judge Sprinkel temporarily suspended the Plaintiff's remaining 153 day for 60 days so he could gather the evidence of his innocence and the Plaintiff was released that evening.

16.    In March 2006, about a month after the Plaintiff was released from jail, and after agreeing to mutual financial discovery with the Plaintiff's attorney, Defendant Llabona filed a motion for a protective order for the banking records of the Plaintiff's former wife and to prevent her client from being deposed.  This information was needed by the Plaintiff to prove his innocence.

17.    In Defendant Llabona's March 2006 motion for a protective order, she misrepresented to the Court five different matters of fact and law.  In this regard she stated that:

17.(a)  The time to appeal the orders entered by the Court has also lapsed.

17.(b)  The Former Husband had ample opportunity to conduct discovery and accumulate his evidence prior to the hearing.

17.(c)  He does not have the right to do so after the hearing.

17.(d)  The appellate court in the Fifth District has held that that portion of a contempt order involving the calculation of support arrearages is a final order, so that the doctrine of res judicata precludes the losing party (the Former Husband in the instant Case) from relitigating the calculation in a later stage of the proceeding. See *Department of Health & Rehabilitative Servs. v. Beckwith*, 624 So.2d 395 (Fla. 5th DCA 1993).

17.(e)  The Court in conjunction with the Order entered on February 16, 2006, entered an Order setting a review hearing for March 27, 2006 at 1:30 p.m., to determine the payment of arrears, NOT to rehear the cont~ matter.

Exhibit "1"
June 16th, 2010
Bates # 5

18. She then stated that "the only issue remaining [for Judge Sprinkel to decide] is how the Former Husband is to repay his child support arrears and whether he is going to return to jail to serve the remainder of his sentence."

19.    Judge Sprinkel denied Defendant Llabona's motion and the Plaintiff was able to depose her client and obtain his former wife's banking records.

20.    Defendant Llabona no longer worked for the Plaintiff's former wife on the Plaintiff's underlying family law case after April 15th, 2006.

21.    Defendant Llabona's office received a Notice of Intent to Sue letter, from the Plaintiff, at 10:16 a.m., on November 13th, 2009, regarding this litigation.

22.    In February 2010 the Plaintiff's family law attorney subpoenaed documents from Defendant Llabona regarding her representation of the Plaintiff's former wife.  Defendant Llabona partially responded on March 2nd, 2010, to which she sent about 40 pages of documents including correspondence with her client.

23.    On March 4th, 2010, Judge Thorpe found that when the Plaintiff was incarcerated in 2006, he had overpaid his former wife for all obligations including child support, health benefits for the children, and all other MSA obligations  by more than $11,000, which contrasts sharply with the $43,188 judgment entered at the time of the Plaintiff's incarceration.  After this finding of fact, Judge Thorpe vacated the Plaintiff's remaining 153 day jail sentence, vacated the civil judgment, and vacated the child support arrearage.  At this hearing, Judge T⋯ ⋯e the contempt violation from the Plaintiff's record because the⋯

Exhibit "1"
June 16th, 2010
Bates # 6

the January 2006 proceeding and because the Plaintiff had not paid his total child support obligation through the Florida Disbursement Unit as ordered in his MSA.

## JUDGE PERRY'S ROLE IN LAWSUIT

24.    Judge Perry is a constitutional officer and employee of the state of Florida, empowered by Article V, §2.(d)[4] of the Florida Constitution to act as administrative supervisor over the 9th Circuit Court Of Florida.  In his position, Judge Perry oversees and enforces the local rules, policies, and customs, to ensure that judicial proceedings are fundamentally fair for the Osceola and Orange County divisions of the 9th Circuit Court Of Florida.

25.    Judge Perry's role in this lawsuit is not from any direct interaction with the Plaintiff.  Judge Perry has never met the Plaintiff nor has he ever participated in any sort of judicial proceeding with the Plaintiff.  Judge Perry is not being sued for damages in his his judicial role because judges exercising authority in their judicial roles are absolutely immune.  Additionally, Judge Perry's actions, in his judicial role, did not affect the Plaintiff.

26.    Judge Perry is not being sued for the actions of Judge Sprinkel or any other 9th Circuit employee.  This is because Judge Sprinkel was duped by Defendant Llabona and her client; and because Judge Sprinkel's absolute judicial immunity would extend to Judge Perry under the doctrine of *respondeat superior*.

---

[4] "A chief judge in each circuit shall be chosen from among the cir supreme court rule. The chief judge shall be responsible for the admir circuit courts and county courts in his circuit."

Exhibit "1"
June 16th, 2010
Bates # 7

27.    Judge Perry is being sued by the Plaintiff because he failed in his duty to ensure that the 9th Circuit Court's rules, policies, and customs conform to the requirements of the U. S. Constitution in connection with the Plaintiff's Civil Rights regarding indirect-child-support-civil-contempt hearings, where the Plaintiff lost his liberty.   Judge Perry is responsible for those rules, policies, and customs that were established as the policy of the 9th Circuit Court at the time of the Plaintiff's incarceration that conflicted with the Constitution.   Judge Perry is also responsible for the enforcement or lack of enforcement of those same rules, policies, and customs.

## "CIVIL" AND "CRIMINAL" CONTEMPT PROCEEDINGS IN FLORIDA

28.    This pleading is not referring to direct contempt of court proceedings in any manner.   The judge has the unquestioned authority to punish summarily a disruption, in his presence, so as to keep order in his court.

29.    The Florida Supreme Court has required the courts that it exercises authority over, various Rules of Procedures.  These are the minimum protections that these courts are obligated to abide by under Florida law.   In Florida, the rules for indirect civil contempt proceedings are not uniform among themselves.  Additionally, these rules are also different from the rules for criminal contempt proceedings.  For this reason, the violations listed are what the Plaintiff experienced in his indirect-child-support-civil-contempt hearing, in which he lost his liberty

Exhibit "1"
June 16th, 2010
Bates # 8

30.    The Florida Supreme Courts standards in this regard are different from the U. S. Supreme Court's principle that "the labels affixed either to the proceeding or to the relief imposed . . . are not controlling and will not be allowed to defeat the applicable protections of federal constitutional law."[5]  The Florida Supreme Court has decided that a "contempt" proceeding does not need the same 14th Amendment protections as a criminal proceeding merely because it is labeled "contempt".

## THE 9TH CIRCUIT'S RULES THAT ARE UNCONSTITUTIONAL

31.    Upon information and belief, the following are the standard constitutionally protected procedures that the Ninth Circuit Court of Orlando Florida is currently denying to accused contemnors in indirect child support enforcement "civil" contempt hearings, in which there is a potential loss of liberty.

32.    The 2010 version of the Florida Family Law Rules Of Procedure provides the process through which to conduct an indirect-civil-contempt to enforce child support collection with incarceration.  In these de facto criminal proceedings a person could lose their freedom indefinitely, if they lose their case.  As a guiding Due Process/Equal Protection principle, the U. S. Supreme Court has held that "an indigent litigant has a right to appointed counsel only when, if he loses, he may be deprived of his physical liberty.   It is against this presumption that all the other elements in the due process decision must be measured."[6]

---

[5] *Hicks v. Feiock, 485 U. S. 624,at 631 (1988).*

[6] *Lassiter v. Department of Social Servs. of Durham Cty.*, 452 US 18, at ..

Exhibit "1"
June 16th, 2010
Bates # 9

I. THE 9TH CIRCUIT'S DENIAL OF "EQUAL PROTECTION OF THE LAWS"

33.    In accord with this bright-line Due Process presumption, from which the other Due Process elements must be calculated, the Florida Legislature created a provision for a portion of the citizenry to have some of the Due Process protections that the Constitution mandates.    At two separate locations in the 2009 Florida Statutes, at §984.09(4)(b) and §985.037(4)(b),[7]    the legislature outlined the procedures that the Florida courts are supposed to follow when charging a juvenile with indirect contempt of court, (the statutes omit either the "civil" or "criminal" misnomer).    These provisions in the Florida statutes are constitutional for those in the minority class, but are unconstitutional for those in the majority class because they have a different level of protection regarding contempt laws.    Failure to provide this is a violation of the 14th Amendment.

II. THE 9TH CIRCUIT'S DENIAL OF ADEQUATE NOTICE OF THE CHARGES

34.    There are currently no rules obligating anyone to notify the accused of the potential consequences he faces.    It is unconstitutional to compel a person to court on accusations without informing him of the exact factual disputed amounts

---

[7] "(b) If a child is charged with indirect contempt of court, the court must hold a hearing within 24 hours to determine whether the child committed indirect contempt of a valid court order. At the hearing, the following due process rights must be provided to the child:

1. Right to a copy of the order to show cause alleging facts supporting the contempt charge.

2. Right to an explanation of the nature and the consequences of the proceedings.

3. Right to legal counsel and the right to have legal counsel appointed by the court if the juvenile is indigent, under s. 985.033. [s. 985.203 in the 2005 statutes].

4. Right to confront witnesses.

5. Right to present witnesses.

6. Right to have a transcript or record of the proceeding.

7. Right to appeal to an appropriate court."

§984.09(4)(b) and §985.216(4)(b) Fla.Stat.(2009)



Exhibit "1"
June 16th, 2010
Bates # 10

and the consequences for his actions.[8]   This information is extremely vital so the accused can make an informed decision on, among other things, whether to seek out an attorney.

35.    The person making the contempt charges does not have to swear to them, only raise the issues through a motion, which is a violation of the 4th Amendment.  Swearing to the charges impresses upon the accuser the severity and seriousness of the situation and the potential harm to the minor children as a result of false charges.[9]

36.    The author of the motion for contempt is supposed to put the following warning on the motion, verbatim;

> FAILURE TO APPEAR AT THE HEARING MAY RESULT IN THE COURT ISSUING A WRIT OF BODILY ATTACHMENT FOR YOUR ARREST.  IF YOU ARE ARRESTED, YOU MAY BE HELD IN JAIL UP TO 48 HOURS BEFORE A HEARING IS HELD.

Fla. Fam. L. R. P. 12.615(b) (2010).

37.    If this warning is omitted, as in the Plaintiff's case, and the accused does not show up for court, the judge can issue a writ of attachment for the accused contemnor's arrest.  There is nothing expressed in these rules to require that the court verifies that the accused received correct notice before issuing the writ of attachment.

---

[8] Elementary considerations of fairness dictate that individuals sh[...] know what the law is and to conform their conduct accordingly; sett[...] be lightly disrupted." *Landgraf v. USI Film Products*, 511 US 244, at 2[...]

[9] Fla. Fam. L. R. P. 12.615(b) (2010)



Exhibit "1"
June 16th, 2010
Bates # 11

### III. THE 9TH CIRCUIT'S VIOLATION IN DENYING COURT RECORDING AND/OR REPORTING

38.    The 9th Circuit does not record or report indirect-child-support-civil-contempt hearings at public expense based on Judge Perry's Administrative Order, #07-98-43 dated April 12th, 1999.   Without reporting or recording these hearings, the party wanting to buy transcripts for appellate review is precluded,[10] as was the Plaintiff in his underlying case.   The Florida Supreme Court recognized this also in its statement that, "Without a record, a party's ability to exercise their appellate rights is, in most cases, lost before the final judgment is ever entered."[11]

39.    While being deficient for Due Process protections, the following instruction is required by the Florida Family Law Rules of Procedure of the movant to notify the accused regarding reporting or recording the hearing;

> This notice must also state whether electronic recording or a court reporter is provided by the court or whether a court reporter, if desired, must be provided by the party.

Fla. Fam. L. R. P. 12.615(b) (2010).

40.    If this notice is omitted, the hearing takes place with the alleged contemnor focused on the current proceeding, instead of thinking about, (or, in the case of a *pro se,* even knowing about), the requirements of appellate review in the event of losing the current hearing.[12]

---

[10] *Applegate v. Barnett Bank of Tallahassee*, 377 So. 2d 1150 (1979).

[11] *Amendments to the Florida Family Law Rules of Procedures*, 810 So. 2d 1 at 6 (Fla. 2000).

[12]  Judge Perry establishes the hourly rates for the electronic recording on reporters in the 9th Circuit.  To remedy this constitutional deficiency additional cost to the filing fee for the motion to allow for a reporter If a party sought appellate review after the hearing, the could court charge and beyond the transcriptionist's charges to offset the court's overh owns the records.

Exhibit "1"
June 16th, 2010
Bates # 12

41.    This is extremely unfair since the movant will have had much more time to plan strategy, search for an attorney, research the law, research the rules of procedure, view similar cases in court, and gather necessary documentary evidence, all without a deadline or the stress that comes from the possibility of being incarcerated.  Additionally, because the accused contemnor's freedom is on the line, and because his right to he also has a constitutional right of appellate review, this requirement to expend money in advance so a person can receive a fair hearing is a 14[13] Amendment violation.[13]

## IV. THE 9TH CIRCUIT'S DENIAL OF NOTICE OF THE RIGHT TO HAVE LEGAL COUNSEL, DENIAL OF NOTICE TO HAVE COURT APPOINTED LEGAL COUNSEL IF INDIGENT, AND DENIAL OF THE RIGHT TO HAVE COURT APPOINTED LEGAL COUNSEL IF INDIGENT.

42.    There are no requirements in the Florida Family Law Rules of Procedures for the movant to include any notice of the right to an attorney, or notice of the right to an attorney if the accused contemnor is indigent.  This is a violation of the 14th Amendment.

43.    In *Carnley v. Cochran*, the U. S. Supreme Court reversed the Florida Supreme Court In holding that when "the constitutional infirmity of trial without counsel is manifest, and there is not even an allegation, much less a showing, of affirmative waiver, the accused is entitled to relief from his unconstitutional conviction."[14]

---

[13] "Surely no one would contend that either a State or the constitutionally provide that defendants unable to pay court costs in the right to plead not guilty or to defend themselves in court."  *Griffin v.*

[14] 369 US 506, at 517 (1962).

Exhibit "1"
June 16th, 2010
Bates # 13

44.   In *Argersinger v. Hamlin*, the Supreme Court reversed the Florida Supreme Court In holding that, "absent a knowing and intelligent waiver, NO PERSON MAY BE IMPRISONED FOR ANY OFFENSE . . . unless he was represented by counsel at his trial." (EMPHASIS ADDED).  This policy was reaffirmed in *Alabama v. Shelton*.[15]  In order to be able to waive the right to an attorney, the accused has to know of this right to have an attorney and cannot do that without notification of that right.

45.   The Florida Supreme Court stated regarding the right to an indigent parent's right to court-appointed counsel, that;

> In *Andrews* we concluded that the evidence clearly supported the trial court's determination that the father had the ability to pay the ordered child support and held that there are no circumstances in which a parent is entitled to court-appointed counsel in a civil contempt proceeding for failure to pay child support because if the parent has the ability to pay, there is no indigency, and if the parent is indigent, there is no threat of imprisonment.

*Bowen v. Bowen*, 471 So. 2d 1274 (Fla.1985), citing *Andrews; Pugliese; Demetree v. State ex rel. Marsh, 89 So.2d 498 (Fla. 1956)*.

46.   This circuitous reasoning by the Florida Supreme Court is unconstitutional in the fact that the person they were citing who was found in arrears on child support was adjudicated in contempt, as in the Plaintiff's case, while not having counsel.  In other words, they used the results of an unconstitutional hearing to determine that the hearing was constitutional.



Exhibit "1"
June 16th, 2010
Bates # 14

---

[15] *Argersinger v. Hamlin*, 407 US 25 at 38 (1972), *Alabama v. Shelton*, 5...

## V. THE 9TH CIRCUIT'S DENIAL OF A TRIAL BY JURY

47.    Because notice of the maximum penalties or consequences does not appear on the process, nor is there any statutory or judicial rulings to determine if the indirect "contempt" a person is accused of is serious, not so serious, or petty. Because of this a person does not know what offense he committed or what are the possible consequences of his actions and therefore could be facing an indefinite jail sentence.  Article III, § 2, of the Constitution provides for a jury trial for all but petty offenses, which the U. S. Supreme Court has defined as having a maximum sentence of 6 months.[16]    However, it does not take much more than a month of incarceration to lose all property and means for earning a living.

48.    The Florida Supreme Court's rules conflict with the U. S. Supreme Court's ruling in this case.  Because of its holding that contempt is not a "crime", the Florida Supreme Court's rules does not provide for a jury trial in either a "civil" or "criminal" contempt hearing.    The Florida Supreme Court's committee notes in section 3.840(4) of the 2010 Florida Rules of Criminal Procedure states;

> There is no reason to believe that the statute [of only judges as triers of fact for contempt] is unconstitutional as being in violation of section 11 of the Declaration of Rights of the Florida Constitution which provides, in part, that the accused in all criminal prosecutions shall have the right to a public trial by an impartial jury. Criminal contempt is not a crime; consequently, no criminal prosecution is involved. *Neering v. State*, 155 So.2d 874 (Fla. 1963); *State ex rel. Saunders v. Boyer*, 166 So.2d 694 (Fla. 2d DCA 1964); *Ballengee v. State*, 144 So.2d 68 (Fla. 2d DCA 1962).

Exhibit "1"
June 16th, 2010
Bates # 15

---

[16] *Bloom v. Illinois*, 391 US 194 (1968)

VI. THE 9TH CIRCUIT'S DENIAL TO CONFRONT WITNESSES TO DISCOVERY, INCLUDING THE REQUIREMENT OF THE MOVANT'S FINANCIAL AFFIDAVIT WITH THE FILING OF THE ALLEGED CONTEMPT CHARGES

49.     The U. S. Supreme Court stated that, "The right of a defendant to examine and cross-examine witnesses is too essential to a fair trial to have that right jeopardized . . . ."[17]     Because the Plaintiff's hearing was only scheduled for 30 minutes there was no time available for him to question the accuser about the extensive exhibit submitted with the unsworn motion.

50.     Because the accuser of contempt is acting as a de facto prosecutor, without the additional mandatory obligations of a prosecutor, the presumption of guilt is difficult to overcome.     The right to have meaningful discovery and any other exculpatory evidence before a contempt hearing is an obligation that is constitutionally required.[18]   A financial affidavit is critical and should be required to be filed at the time of filing the motion for contempt just as it is required in "a request for child support, alimony, equitable distribution of assets or debts, or attorneys' fees, suit money, or costs."   Otherwise, as in the Plaintiff's case, the court has no ability to quantify the amount in dispute and its the relationship with the monthly expenses of the accuser.   This is a violation of the 6th Amendment.

VII. THE 9TH CIRCUIT'S DENIAL OF THE EVIDENTIARY LEVEL TO BE CLEAR-AND-CONVINCING.

51.     Child support contempt hearings have the perception of being highly prejudicial and need the evidentiary level to be at clear-and-convincing.   The reason

---

[17] *In re Murchison.*, 349 US 133, at 140 (1955).

[18] "We hold today that the Sixth Amendment's right of an accused against him is likewise a fundamental right and is made obligatory on tl Amendment."*Pointer v. Texas,* 380 US 400 (1965).

Exhibit "1"
June 16th, 2010
Bates # 16

for this is that the Supreme "Court repeatedly has recognized that civil commitment for any purpose constitutes a significant deprivation of liberty that requires due process protection." For civil commitment the Court requires "proof more substantial than a mere preponderance of the evidence." This higher level of proof is required for civil commitment even though "state power is not exercised in a punitive sense." A preponderance-of-the-evidence level of proof is inadequate in a civil commitment proceeding even though "a civil commitment proceeding can in no sense be equated to a criminal prosecution."[19]

52.    A child support enforcement hearing is a de facto criminal proceeding where the incarceration is used to "persuade" the individual to conform to a state requirement and it is not for his protection or mental health benefit as a civil commitment would be.    There could be, as in the Plaintiff's case, large disagreements over material facts.    In a mental health commitment hearing, it is inadequate to incarcerate a person on a mere preponderance-of-the-evidence level of proof because the U. S. Supreme Court held that the level of proof required for a civil commitment hearing has to be at least equal to "the 'clear and convincing' standard which we hold is required to meet due process guarantees . . . ."[20]

---

[19] *Addington v. Texas*, 441 US 418 at 426 (1979)
[20] *id.* at 433.

Exhibit "1"
June 16th, 2010
Bates # 17

VIII. THE 9TH CIRCUIT'S DENIAL OF THE RIGHT TO NOT BE PLACED INTO PEONAGE OR IMPRISONED FOR DEBT

53.     Peonage is said to be "compulsory service to secure the payment of a debt."[21]  For 80 years after the 13th Amendment[22] to the Constitution was passed in 1865 and the anti-peonage statutes were passed in 1867, the U. S. Supreme Court ruled on cases from Florida or one of the adjoining states to Florida that kept trying to enforce peonage through statutory law.  The last case the U. S. Supreme Court ruled on was from Florida in 1944,[23] in which it struck down a state peonage statute as unconstitutional.

54.     Rather than rely on statutory law, the state of Florida now uses the contempt powers of the courts to enforce peonage.  The state claims to enforce support debt through lawful work release programs where the person can be compelled to work, as in the case of the Plaintiff, even though being incarcerated through civil process in violation of the 13th amendment.

55.     In view of the Florida Supreme Court's holding that contempt is not a "crime", work release is a violation of the 13th Amendment.

56.     Judge Perry's administrative order Number 07-93-58-04, dated April 14th, 2008, allows for the transfer of those incarcerated for civil contempt for child support non-payment to work release programs in violation of the 13th Amendment.

---

[21] *Clyatt v. United States*, 197 U. S. 207 (1905).

[22] "SEC. 1. Neither slavery nor involuntary servitude, except as a punishment ~~~ ~~~of the party shall have been duly convicted, shall exist within the United ~~~ ~~~ ct to their jurisdiction.

"SEC. 2. Congress shall have power to enforce this article by appropria~~~

[23] *Pollock v. Williams*, 322 US 4 (1944).

Exhibit "1"
June 16th, 2010
Bates # 18

The Florida Rules of Family Procedure allows for a person to be incarcerated without the Due Process protections of a criminal trial when it states:

> If the court grants the motion for contempt, the court may impose appropriate sanctions to obtain compliance with the order including incarceration, attorneys' fees, suit money and costs, compensatory or coercive fines, and any other coercive sanction or relief permitted by law provided the order includes a purge provision as set forth in subdivision (e) of this rule.

Fla.Fam.L.R.P. 12.615(d)(2) (2010).

## DEFENDANTS' VIOLATIONS OF THE PLAINTIFF'S CIVIL RIGHTS

57.    Defendant Llabona, as an attorney, had knowledge that the procedures of the 9th Circuit Court were deficient; she had knowledge about how to manipulate those procedures; and she had initiated the family law action with fraudulent process[24] against the Plaintiff and because Defendant Llabona was the cause, she is responsible for all the Constitutional deprivations that the Plaintiff suffered.

58.    Judge Perry was (and is) responsible for all the rules, policies, and customs of the 9th Circuit Court.  He also had (and has) the responsibility to assure that these rules, policies, and customs conform to the due process standards of the U. S. Constitution.    To the degree that these rules, policies, and customs were deficient to the constitutional requirements at the time of the deprivation of the Plaintiff's civil rights, then Judge Perry is the cause, for which he is responsible.

---

[24] "Any person who simulates legal process, including, but not limited to, action┄ ┄ to real estate or personal property, indictments, subpoenas, warrants ┄ ┄ ┄s, judgments, or any legal documents or proceedings, knowing or ┄ ┄e contents of any such documents or proceedings or the basis for a ┄ ┄; commits a felony of the third degree, punishable as provided in s. ┄ Fla.Stat. 843.0855(3) (2005).

Exhibit "1"
June 16th, 2010
Bates # 19

59.    The Plaintiff was denied his 14th Amendment right to have Equal Protection Under The Law as compared to the Florida Statutes §984.09(4)(b) and §985.037(4)(b) and the requirements of Due Process for indirect contempt proceedings for juveniles  Under the 4th, 5th, 6th, 13th, and 14th Amendments to the U.S. Constitutional, the Defendants, either jointly or severally, denied the Plaintiff, his constitutional right;

59.(1)  to have an equal protection of laws that is provided to a juvenile in an indirect contempt hearing.

59.(2)  of notice of the sworn or affirmed charges at the time process was served and to have an explanation of the charges.

59.(3)  of notice of the nature of the proceedings and the potential consequences of those proceedings.

59.(4)  to have a transcript or recording of the proceeding.

59.(5)  of notice of his right to have legal counsel and his right to have legal counsel appointed by the court if indigent.

59.(6)  of notice to have legal counsel appointed by the court if indigent.

59.(7)  to a criminal or civil jury trial.

59.(8)  to confront witnesses.

59.(9)  to discovery, including the requirement of the movant's financial affid~·'' ~ith the filing of the alleged contempt charges and any oth     'e equivalent to what a prosecutor would have to supply ir.

Exhibit "1"
June 16th, 2010
Bates # 20

59.(10) to have irrelevant and highly prejudicial civil claims excluded from the contempt charges.

59.(11) to have the evidentiary level, be at a clear-and-convincing level.

59.(12) to have a determination of his ability to pay before incarceration.

59.(13) to not be convicted based upon fabricated evidence.

59.(14) to not be incarcerated for peonage, especially for a debt he did not owe.

59.(15) to not be imprisoned for debt, especially for a debt he did not owe.

## PLAINTIFF'S DAMAGES

60.    As a result of being incarcerated for his first time ever, on January 18th, 2006, through February 13th, 2006, The Plaintiff has suffered from shame, embarrassment, mental anguish, loss of freedom of movement, and the loss of freedoms guaranteed to every citizen under; Article I, § 9 of the Florida Constitution; Article III, § 2, of the Constitution; the 4th, 5th, 6th, 13th, and 14th Amendments; and various Florida Statutes and torts without due process.

61.    The Plaintiff also caught staphylococcus while incarcerated which has continued to flare up since and would disappear with medical treatment.   Although he served 27 days of a 180 day sentence, he still believed that he could be forced to serve the rest of the sentence for an even greater loss of freedom.   This belief ceased on March 4th, 2010 when The Plaintiff's sentence was overturned.

62.    The Plaintiff assesses his total compens           n incarceration and subsequent "seizure" from the denial of his

Exhibit "1"
June 16th, 2010
Bates # 21

the substantial professional fees and expenses in the litigation to prove his innocence to total $1,000,000.

## JUDGE PERRY'S CHARGES

63.     The plaintiff re-avers, reiterates and incorporates by reference, averments in paragraphs 1 through 62 and the exhibits filed (Docs. 15-1 through 15-8) with the same force and effect as if fully set forth here and at length and further pleads.

64.     Judge Perry caused the Plaintiff's damage because he failed in his duty to ensure that the 9th Circuit Court's rules, policies, and customs conform to the requirements of the U. S. Constitution.   Judge Perry is responsible for those rules, policies, and customs that were established as the policy of the 9th Circuit Court at the time of the Plaintiff's incarceration, which conflict with the Constitution.   Judge Perry is also responsible for the enforcement or lack of enforcement of those rules, policies, and customs regarding child support indirect civil contempt with the potential for loss of liberty.

65.     The Plaintiff is seeking recovery for damages from Judge Perry under the following:

65.(1)  Forty-two U. S. C. § 1983 for the violation of the 14th Amendment (failure to provide equal protection of the laws).

65.(2)  Forty-two U. S. C. § 1983 for the violation of the 4th Amendment (failure to require adequate notice of the charges).

Exhibit "1"
June 16th, 2010
Bates # 22

65.(3)   Forty-two U. S. C. § 1983 for the violation of the 14th Amendment (failure to record or report hearings so the accused has access to appellate review).

65.(4)   Forty-two U. S. C. § 1983 for the violation of the 14th Amendment (failure to provide the accused with; notice to have an attorney; notice to have an attorney if indigent; and provision to appoint counsel if indigent).

65.(5)   Forty-two U. S. C. § 1983 for the violation of Article III, § 2, of the Constitution (failure to provide the accused with a jury trial).

65.(6)   Forty-two U. S. C. § 1983 for the violation of the 6th Amendment (failure to provide the accused with meaningful method of discovery).

65.(7)   Forty-two U. S. C. § 1983 for the violation of the 5th and 14th Amendment (failure to provide the accused the adjudication level of a clear-and-convincing level).

65.(8)   Eighteen U. S. C. § 1595 for the violation of 18 U. S. C. § 1594(a) for attempting to violate sections 18 U. S. C. § 1581 (Peonage) and/or 18 U. S. C. § 1589 (Forced Labor) in violation of the 13th Amendment.

65.(9)   Eighteen U. S. C. § 1595 for the violation of 18 U. S. C. § 1581 (Peonage) and/ or 18 U. S. C. § 1589 (Forced Labor) in violation of the 13th Amendment.

## DEFENDANT LLABONA'S CHARGES

66.   The plaintiff re-avers, reiterates and incorporates by reference, averments in paragraphs 1 through 65 and the exhibits filed (Docs. 15-     same force and effect as if fully set forth here and at length and

Exhibit "1"
June 16th, 2010
Bates # 23

67.   Defendant Llabona caused the Plaintiff damage because she fraudulently and feloniously filed false charges against him.   Defendant Llabona intentionally exploited the court's Due Process protection deficiencies by falsifying a motion for contempt in which she misrepresented the Plaintiff's duty from two court orders and she used the police powers of Florida to collect money from the Plaintiff that he did not owe.

68.   The Plaintiff is seeking recovery for damages from Defendant Llabona for the following:

68.(1)   Items 65.(1) through 65.(9) *supra*, for knowingly initiating this false action against the Plaintiff, causing him to be subject to the civil rights deprivations.

68.(2)   The tort of malicious prosecution/false imprisonment/false arrest.

68.(3)   Forty-two U. S. C. § 1983 for the violation of the 14th Amendment (instituting malicious prosecution resulting in the Plaintiff's incarceration for 27 days and under a state sentence for over 4 years).

68.(4)   Eighteen U. S. C. § 1595 for the violation of 18 U. S. C. § 1594(a) for attempting to violate sections 18 U. S. C. § 1581 (Peonage) and/or 18 U. S. C. § 1589 (Forced Labor) in violation of the 13th Amendment by attempting to keep the Plaintiff incarcerated.

68.(5)   Eighteen U. S. C. § 1595 for the violation of 18 U. S. C. § 1581 (Peonage) and/ or 18 U. S. C. § 1589 (Forced Labor) in violation of " ____ by attempting to keep the Plaintiff incarcerated.

Exhibit "1"
June 16th, 2010
Bates # 24

69.     The Plaintiff is seeking damages from  all defendants for attorney's fees and costs under 18 U. S. C. § 1595 and 42 U. S. C. § 1988.

70.     The Plaintiff's incorporates the identical claims against Defendant Lusan C. Llabona, P.A., which is fully liable for these actions per Fla.Stat. § 621.07.

71.     As a direct and proximate result of the acts described herein, plaintiff seeks PUNITIVE damages in the amount of $3,000,000, to make an example of Defendant Llabona for conduct that was intentional, criminal, and in reckless disregard for the rights of others.  The Plaintiff requests these PUNITIVE damages to deter future actions in kind by Defendant Llabona and others in similar situations.

72.     Plaintiff requests trial by jury for all issues so triable.

**WHEREFORE,** plaintiff CLARK A. HULS prays for entry of judgment against the HONORABLE BELVIN PERRY, JR.; LUSAN C. LLABONA; and LUSAN C. LLABONA P.A., including award of any and all ascertainable damages, as well as any other legal or equitable relief that the Court deems just and proper.

I DECLARE under penalty of perjury that the foregoing is true and correct and I further certify that I presented the foregoing to the Clerk of the Court for filing and uploading to the CM/ECF system on the      day of            2010.

Clark A. Huls, *pro se*
2862 Pine Avenue
Mims, FL 32754
Telephone: (407) 466-9018
Facsimile: (813) 944-494?
E-mail address: ·'

Exhibit "1"
June 16th, 2010
Bates # 25